In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00001-CV
_____

WILLIAM SCHULZE AND SUSAN SCHULZE, Appellants

V.

JONATHAN CARDENAS, Appellee

_____

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 19-10-14090-CV
_____

MEMORANDUM OPINION

William and Susan Schulze (the Schulzes) appeal from a take-nothing judgment following the bench trial of a case in which they alleged they were rear-ended by a truck driven by Jonathan Cardenas. On appeal, the Schulzes argue that the trial court abused its discretion by imposing a death penalty sanction—excluding the testimony of the surgeon who operated on William Schulze—for their attorney's failure to comply with the requirements of the trial court's Scheduling Order. The

1

Scheduling Order required the parties to designate the pages and lines of the deposition testimony the parties intended to offer into evidence fourteen days before trial, and the Schulzes' attorney didn't file line-and-page designations until the day of the trial.

To successfully reverse a trial court's judgment based on an error in excluding evidence, the appellant must demonstrate either that (1) the trial court erred by excluding the evidence and the error "probably caused the rendition of an improper judgment," or (2) that the error "probably prevented the appellant from properly presenting the case to the court of appeals."[1] The record shows that after the trial court announced that the surgeon's deposition testimony would not be admitted into evidence in the trial, the trial court asked whether the parties had "any evidence that you're going to want to present?" The Appellants' attorney (who also represented the Schulzes in the trial) told the trial court that the trial court's ruling put her "in a difficult position because without [the surgeon's] deposition testimony, with reference to the injuries and the causation, . . . it's a very difficult case for us to be able to make at this point." Then, the attorney for Mr. Cardenas told the trial court that his

---

[1]Tex. R. App. P. 44.1(a).

client would try the matter to the bench and waive a jury. The Appellants' attorney agreed to the suggestion to present the case to the bench. When the Schulzes called no witnesses, Cardenas's attorney moved for a directed verdict based on the Schulzes' attorney's representation "that they're going to be unable to establish causation in this case."

The record shows that before the trial court granted Cardenas's motion for directed verdict, the Schulzes' attorney failed to make an offer of proof by presenting evidence on the issues of Cardenas's negligence and evidence on whether Cardenas's negligence was a proximate cause of injuries the Schulzes alleged they suffered when their car was rear-ended by Cardenas's truck. "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court."[2] No offer of proof was made here, as the record doesn't show that the Schulzes' attorney proffered any depositions into evidence or summarized them by making a bystander's bill. Because we reject the Schulzes' argument that the trial court's ruling excluding their surgeon's testimony amounted to a death penalty

---

[2]*Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331 (Tex. App.—Dallas 2008, no pet.); *see also* Tex. R. Evid. 103(c) (allowing a party to present the evidence to the trial court in an offer of proof "as soon as practical").

sanction because they failed to create a record sufficient to establish that the ruling precluded their ability to try the case on its merits, we will affirm.

## Background

The Schulzes sued Cardenas for negligence, alleging they were injured when he rear-ended their car with his truck.[3] Their petition includes a jury demand. After Cardenas was served, an attorney appeared and answered the suit on Cardenas's behalf.

In January 2020, the judge of the court in which the case was initially filed—Judge Jennifer Robin of the 410th Judicial District Court—signed a Scheduling Order, which required the parties to comply with several deadlines before that Scheduling Order set the case for trial, which was on October 12, 2020. Among other things, the Scheduling Order provided that the parties file and serve "all deposition excerpts that may be offered at trial in lieu of live testimony, with specific designated page and line numbers" by October 1, 2020.

---

[3]Initially, the Schulzes sued Jonathan and his mother, Areli Cardenas, but they nonsuited Areli when they filed their First Amended Petition.

4

In August 2020, although no order of transfer to another trial court is included in the Clerk's Record, the case was apparently transferred to the 410th District Court. In August, the judge of the 457th Judicial District, Judge Vince Santini, on his own motion cancelled the Scheduling Order of the 410th District Court and adopted another Scheduling Order, which among other things established a fifteen-day deadline for filing motions for continuance absent "exigent circumstances."

Under the August 2020 Scheduling Order, the parties were required to submit a Joint Notice, which required the parties to advise the trial court whether the case was ready for trial, how long they estimated the trial would take, and whether there were any pending motions before the court. The Joint Notice also required that the parties exchange exhibit lists, witness lists, and "[a]ll deposition excerpts that may be offered at trial in lieu of live testimony . . . by specific designated pages and line numbers" no later than fourteen days before the trial. Under Judge Santini's Joint Notice, these lists were also required to be filed with the court. In September 2020, the trial court set the case for trial on January 19, 2021.

In January 2021, the parties missed the fourteen-day-before-trial deadline for filing their Joint Notice by one day. On the day after the Joint Notice was due (but not filed), the trial court dismissed the case for want of prosecution. One day later, the Schulzes filed an unopposed Verified Motion to Reinstate the case. In their Motion to Reinstate, the Schulzes alleged that even though the parties had missed the trial court's deadline for filing the Joint Notice under the trial court's Scheduling Order, their failure had been unintentional, had resulted from a mistake, and "it was not made with any conscious indifference" to the trial court's orders. The Schulzes also asked the trial court to continue the trial so that the parties could enter settlement negotiations since the parties had completed written discovery and had also just the day before completed "the deposition of Plaintiff's surgeon, Dr. [David] Tomaszek."

The trial court granted the request to reinstate the case and signed an order resetting the trial for March 2021. In the next ten months, the trial court set and reset the case several more times, with the last trial setting of October 4, 2021. Each of the trial court's notices extending the trial date includes boilerplate language stating: "Unless Otherwise Ordered By The Court, The Other Dates As Calculated From The Trial

6

Date Stated In The Docket Control Order Signed On February 26, 2021 Remain The Applicable Deadlines For This Case Regardless Of The Reason For The Reset."[4]

The Schulzes, however, didn't strictly comply with the fourteen-day-pretrial deadlines in the trial court's February 2021 Notice of Reset: each Joint Notice of Reset required the parties to file "all pretrial materials described in the Docket Control Order signed on 01/19/2020 . . . 14 days before [October 4, 2021]." For example, the Schulzes' attorney didn't meet the fourteen-day deadline with respect to the Exhibit List and Trial Witness lists—the Schulzes' attorney filed these lists on September 28, 2021, six days rather than fourteen days before the October 4, 2021, trial. Moreover, even though the Schulzes' Witness List reflects that the plaintiffs reserved the right to call Dr. Tomaszek "live or by deposition[,]" their attorney failed to file the page and line designations required by the January 2020 Scheduling Order (which is

---

[4]We have altered the language we have quoted from the Notice of Trial to make it easier to read by capitalizing only the first letter of each word, but the language quoted in the Notice appears the Notice in all caps.

referred to by the trial court in its Notices of Reset as the Docket Control Order) to specify what parts of Dr. Tomaszek's deposition the plaintiffs were planning to offer into evidence in the trial on October 4, 2021.

On the same day the Schulzes' attorney filed the Exhibit and Trial Witness Lists, she filed an Agreed Motion For Continuance. In the Agreed Motion, the Schulzes' attorney asked the trial court to continue the case from its setting on October 4 because Dr. Tomaszek wasn't available "to testify at trial due to serious health matters," which the motion then goes on to specifically describe. The Schulzes' attorney verified the Agreed Motion for Continuance, and in her verification the attorney stated that the information in the Agreed Motion was based on information that she had obtained from Dr. Tomaszek's office about the doctor's availability and the reasons his office provided about why the doctor wasn't available to testify in Conroe in a trial conducted during the week of October 4th. Neither the Agreed Motion for Continuance nor the information in the Verification that accompanies the motion state when the plaintiff's attorney first learned that Dr. Tomaszek would not be available to appear for the trial.

8

About four hours after the Schulzes' attorney filed the Agreed Motion for Continuance, the trial court signed an Order Denying Continuance.[5] On October 1, 2021, (three days before the trial), the Schulzes amended their witness list to reflect that they intended to present Dr. Tomaszek's testimony by presenting his deposition testimony alone.

---

[5]The pleadings don't show that the parties submitted the Agreed Motion to the trial court by submission or that the parties appeared in court on the motion and argued the motion. The Order denying the continuance states "this Court considered" . . . "the Agreed Motion for Continuance and finds it should be denied." In the Final Judgment, the trial court added that it denied the Agreed Motion for Continuance on the day it was filed because "it was untimely, the Plaintiffs had seven trial settings to prepare, and the Plaintiffs had the ability to designate excerpts in the nine months that followed Dr. Tomaszek's deposition."

The trial court was clearly frustrated with the number of times the case had been set and reset. Even so, Rule 330(d) provides that "the court shall respect written agreements of counsel for postponement and continuance if filed in the case when or before it is called for trial unless to do so will unreasonably delay or interfere with other business of the court." Tex. R. Civ. P. 330(d). On appeal, however, the appellants have not raised an issue complaining that the trial court abused its discretion by failing to conduct a hearing on their Agreed Motion for Continuance or that it abused its discretion by failing to grant their Motion for Continuance based on its failure to comply with Rule 330(d). And importantly, it is not this Court's role to address unassigned error. *See, e.g., Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Allright, Inc. v. Pearson*, 735 S.W.2d 240 (Tex. 1987).

At just after midnight on October 4, 2021, the Schulzes filed a document listing the pages and lines from Dr. Tomaszek's deposition that they intended to ask the trial court to admit into evidence during the trial. The portions of the testimony corresponding to the page and line numbers listed in the document that the plaintiffs' attorney filed is not attached to the that document the plaintiffs' attorney filed with the District Clerk. On the morning of October 4, which was the first day the case was on the court's trial docket for the week, the attorneys for the parties appeared before Judge Santini for a pretrial conference. During the pretrial conference, Judge Santini told the attorneys that they would probably be going to trial in the case before another judge either that day, tomorrow, or Wednesday. Turning to address other pretrial matters, Cardenas's attorney objected to and told the trial court that the plaintiffs had not timely designated their exhibits, witnesses, and the excerpts from the depositions they intended to present into evidence as required by the trial court's Scheduling Order fourteen days before the trial.

As to William Schulze's surgeon, Dr. Tomaszek, Cardenas's attorney argued that the plaintiffs' failure to timely identify the doctor as a witness fourteen days before the trial who would be testifying by

deposition alone and failure to provide the defense with the pages and lines from the doctor's deposition left the defendant without enough time to prepare a response.

In response to these arguments, the Schulzes' attorney told the court that the parties had taken Dr. Tomaszek's deposition "months previously." Because the defendant's attorney had "all this information," the plaintiffs' attorney suggested, there could be no "surprise" about what Dr. Tomaszek would say. She also explained why, for reasons related to his health, Doctor Tomaszek couldn't appear for the trial during the week of October 4th. Responding to the plaintiffs' attorney's argument, Judge Santini explained that because the Schulzes' designations were untimely and violated the trial court's Scheduling Order, the defendant's attorney didn't "have a chance to object[,]" and the court had been deprived of the opportunity to rule on whatever objections the defense might have raised to the doctor's testimony before starting the trial.

After granting the defendant's motion to exclude Dr. Tomaszek's testimony, the trial court asked the plaintiffs' attorney "do y'all have any evidence that you're going to want to present?" The plaintiffs' attorney responded that she was "in a difficult position because without Dr.

11

Tomaszek's deposition testimony, with reference to the injuries and the causation, . . . it's a very difficult case for us to be able to make at this point." After the defendant's attorney told the trial court the defendant would waive a jury, he asked the trial court to resolve the matter "right now" in a trial to the bench. At that point, the trial court asked the parties for a motion, and Cardenas's attorney "moved for a directed verdict based on [the representation by the plaintiffs' attorney] that they're going to be unable to establish causation in this case." The plaintiffs' attorney didn't object, didn't ask to call any witnesses, and didn't ask the trial court for the opportunity to make an offer of proof.

When the trial court ruled, it announced that the court was "going to grant the directed verdict on causation in this - - matter, although they're going to say that no evidence was presented, so this is kind of a strange thing because there's – the whole point here for Justices is that we have juries – a jury ready or here ready. The Court's willing to go forward and pick a jury, but the parties, to save the jury's time, because this is the big issue going forward, the main issue for the Justices to look at would be the Court's ruling on Dr. Tomaszek." Following that explanation, the trial granted the defendant's motion for directed verdict.

On October 5, 2021, the trial court signed a judgment ordering that "Plaintiffs, Williams Schulze and Susan Schulze, take nothing of Plaintiffs' suit against Defendant, Jonathan Cardenas." Less than thirty days later, the Schulzes filed a Motion for New Trial. In their motion, they argued that the trial court abused its discretion when it denied their motion for continuance. The Schulzes' motion also argued that the trial court abused its discretion by excluding the designated excerpts they wanted to present of Dr. Tomaszek's deposition from the jury because the ruling excluding his testimony operated as a death penalty sanction, which was more severe than necessary and punished the Schulzes "for a misstep of their attorney," for which they weren't responsible. The trial court denied the Motion for New Trial. The Schulzes timely filed their notice of appeal.

## Analysis

In one issue, the Appellants argue the trial court abused its discretion in excluding Dr. Tomaszek's deposition testimony because the ruling amounts to "a death penalty sanction" with consequences that fall on them rather than their attorney when their attorney is the individual who is responsible for the violation the trial court intended to punish.

Under the circumstances, the Appellants conclude that the sanction is grossly excessive and should be reversed under the standards set out in *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991).

In the proceedings the trial court conducted on the first day of the trial, the plaintiffs' attorney told the trial court that even though Dr. Tomaszek's testimony represented "the main part" of William Schulze's "medical," the plaintiffs also had a chiropractor that they could call during the trial. During the pretrial hearing, the Schulzes' attorney never argued that a ruling excluding Dr. Tomaszek's testimony would amount to a death penalty sanction. Instead, the plaintiffs' attorney argued the case would be "a difficult case for us . . . to make" without the benefit of Dr. Tomaszek's testimony.

To be fair, the trial court was aware that Dr. Tomaszek's testimony would generally be relevant to the tying of at least some of the medical expenses that William Schulze incurred to the collision with Cardenas, as the trial court noted in the hearing that without Dr. Tomaszek, "causation and medicals are going to be an issue for your damages and whatnot." Even so, when the trial court asked the plaintiffs' attorney if

14

she had any evidence she wanted to present, the trial court hadn't mentioned that it would entertain a motion for directed verdict should the plaintiffs select a jury and try their case. Had that been done, the plaintiffs could have relied on whatever other evidence the trial court might have admitted into evidence in the trial relevant to establishing causation, including, but not limited to, testimony from the witnesses listed in the Plaintiffs' Witness List or the evidence in exhibits listed in the Plaintiffs' Exhibit List. In the Exhibit List, for example, the plaintiffs identified medical records from the Schulzes' healthcare providers, including Dr. Tomaszek. In their witness list, they listed a chiropractor, whom their attorney mentioned in the pretrial hearing that they intended to call to testify in the trial. There is also another physician they didn't mention listed in their Witness List who is listed as a witness they were calling "live via Zoom," Dr. Neil Badlani.[6] The trial court's record doesn't include his deposition or a bill of proof explaining why he doesn't

[6]A review of the Clerk's Record reflects that the attorney for Cardenas retained Dr. Badlani, an orthopedic surgeon, to file a counter-affidavit to dispute the reasonableness and necessity of the chiropractic bills that the Schulzes' were alleging were caused by the wreck. That said, Cardenas's attorney never listed Dr. Badlani on the Defendant's Witness List, a list that was timely filed before the trial.

15

possess the qualifications to address whether Dr. Tomaszek's surgery is related in reasonable medical probability to the wreck.

At times, a ruling excluding an expert's testimony impairs the plaintiff's presentation of their case even though the ruling doesn't preclude a trial of the case on its merits. On appeal, the Appellants have not argued that they needed Dr. Tomaszek's testimony to establish that Cardenas's negligence caused the collision between Cardenas and William Schulze. Instead, they argue that they needed Dr. Tomaszek's testimony because he "was the only witness who could fully testify regarding causation and damages, particularly the details of William's surgery." That said, after the defendant's attorney moved for a directed verdict on causation, the Schulzes' attorney didn't offer any evidence to prove that Cardenas's negligence proximately caused the collision, and there is nothing in the Clerk's Record that shows that Cardenas admitted that he was negligent or that his negligence proximately caused the wreck.

Additionally, the record the Appellants created when they were in the trial court isn't sufficient to support their claim that the trial court's

16

ruling constitutes a death penalty sanction.[7] No doubt, the trial court was aware that Dr. Tomaszek had performed surgery on William Schulze based on what the Schulzes' attorney represented and that the Schulzes' attorney was depending on Dr. Tomaszek to establish what she described as much of William's "medical." That said, the Schulzes' attorney didn't provide Judge Santini with the specifics of Dr. Tomaszek's testimony in the pretrial hearing, specifically whether he had testified that in his opinion William's surgery was reasonably related within a reasonable medical probability to the automobile collision between Cardenas and Schulze. And importantly, the Schulzes' attorney never told Judge Santini that the Schulzes' case depended entirely on Dr. Tomaszek's testimony to establish that the rear-end collision with Cardenas in reasonable medical probability caused William's injury and made his surgery necessary. For example, the Plaintiffs' Exhibit List includes

---

[7]*See In re Garza,* 544 S.W.3d 836, 843-44 (Tex. 2018) (explaining the plaintiff was entitled to mandamus relief in a case in which the trial court excluded the plaintiff's surgeon's testimony and medical records when it is the witnesses from whom the records were subpoenaed were the parties responsible for failing to provide the various records based on the relator's argument that "she will almost certainly suffer a direct verdict as to her claim for past hospital expense and the majority of her damages").

medical records from Dr. Tomaszek's office, but without a bill of proof there is no way to know whether those records might include medical records tying William's surgery to the wreck.[8] The trial court also never ruled on the other objections the defendant's attorney raised to the plaintiffs' failure to comply with the requirements of the Joint Notice, including the defendant's objection to admitting the documents listed in the Plaintiffs' Exhibit List, records that were also filed less than fourteen days before the trial.

After the trial court ruled on Cardenas's motion for directed verdict, Judge Santini asked the Schulzes' attorney whether she had any evidence that she wanted to present. When she called no witnesses and didn't ask the trial court for the opportunity to make an offer of proof, the defendant's attorney moved for a directed verdict. During the proceedings on October 4th, the plaintiffs' attorney never argued that the

[8]Cardenas's attorney objected to all the Schulzes' late designations, so the objections would have included these records. But the trial court never ruled on these objections. The record shows that in January 2020, the Schulzes' attorney served affidavits from various medical providers on the defendant's attorney. From the notice the plaintiffs' served, the affidavits appear to have been tied to billing or medical records from the plaintiffs' doctors or other health care providers, and in February 2020, the defendant's attorney filed counter-affidavits addressing the medical expenses incurred by William Schulze.

18

ruling excluding Dr. Tomaszek's testimony operated as a death penalty sanction. Instead, the plaintiffs' attorney told the trial court that without Dr. Tomaszek's testimony "it's a very difficult case for us to be able to make[.]"

Based on the record presented to the trial court, we conclude the Appellants have not established that the trial court's ruling amounts to a death penalty sanction. As mentioned, the plaintiffs' attorney told the trial court that without Dr. Tomaszek the case would be "difficult." Yet the attorney did not say that without the doctor's testimony the plaintiffs would have no evidence to tie William's surgery and medical expenses to the rear-end collision with Cardenas, which occurred in December 2017. For example, the record in the trial court and the appellate record doesn't include the medical records that the plaintiffs listed in their Exhibit List—the medical and billing records from One Step Diagnostic, Parkway Surgery Center, VIP Surgical Center, and Tomaszek Neurosurgical Associates, among others. The plaintiffs' attorney didn't obtain a ruling from the trial court that the court wouldn't admit these records in the trial. And on a record that doesn't demonstrate what information is in the plaintiffs' medical and billing records and without knowing whether

19

these records would have been admitted in a trial, we can't say that the plaintiffs couldn't have tied William's surgery to the rear-end collision.

Additionally, during the hearing on October 4th, the plaintiffs' attorney failed to have the court reporter mark and offer the excerpted portions of Dr. Tomaszek's deposition into the record, which would have allowed the trial court to have reviewed the doctor's testimony before deciding whether to exclude it. To determine whether a sanction operates as a death penalty sanction (had that argument been made), the trial would have needed to consider the information in the medical and billing records listed in the Plaintiffs' Exhibit List, even though this list was not filed fourteen days before the trial because the trial court could have allowed those records into evidence, had not ruled that it would exclude them, even though the defendant had lodged an objection to them because the plaintiffs were tardy in complying with the listing them under the Scheduling Order. Yet because the plaintiffs never obtained a ruling from the trial court on the defendant's objections to their late-filed Exhibit List and because the plaintiffs' attorney didn't make an offer of proof, we don't have sufficient information in the appellate record to determine whether the trial court's ruling precluded the plaintiffs from

proving that Cardenas's negligence was a proximate cause of Dr. Tomaszek's surgery on William after the wreck or operated as a death penalty sanction, as they have argued in their appeal.

To preserve error, the Texas Rules of Evidence generally require that a party make the trial court aware of what the substance of the witness's testimony will be and how excluding the testimony will affect the trial.[9] That wasn't done in the context of the motion for directed verdict ruling at issue in this appeal.

Generally, a reviewing court must decide whether a ruling to excluding evidence operated as a death penalty sanction based on the information in the plaintiffs' offer of proof unless the information necessary to make that decision is apparent based on the context of the evidence the trial court was asked to exclude.[10] Without the benefit of an

---

[9]Tex. R. Evid. 103 (a)(2) (if a ruling excludes evidence, a party must inform "the court of its substance by an offer of proof, unless the substance was apparent from the record"); *see In re Garza*, 544 S.W.3d at 843.

[10]*See Farrell v. Regent Care Ctr. of the Woodlands*, No. 09-15-00230-CV, 2016 Tex. App. LEXIS 13794, at *35-36 (Tex. App.—Beaumont Dec. 29, 2016, no pet.) (holding that the appellant failed to demonstrate that the error was preserved when the record shows the plaintiff's attorney didn't make "an offer of proof to show what testimony he would have elicited from Dr. Garcia if she had been permitted to testify"); *Bobbora,*

offer of proof—an offer that included at least Dr. Tomaszek's deposition—the appellants cannot demonstrate that if the trial court erred in excluding Dr. Tomaszek's testimony that its error "probably caused the rendition of an improper judgment."[11]

On November 3, 2021, the Schulzes' attorney filed a Motion for New Trial. But neither the transcript, nor the excerpts from Dr. Tomaszek's deposition are attached to the Motion.[12] The medical records discussed above are also not attached to the Motion for New Trial. To prevail on their Motion for New Trial, the burden remained on the Schulzes to establish that the trial court erred and that Dr. Tomaszek's testimony, if admitted, wouldn't have been cumulative of other evidence available to the plaintiffs in the trial.[13]

---

255 S.W.3d at 335 (noting that the "[f]ailure to demonstrate the substance of the excluded evidence results in waiver").

[11]Tex. R. App. P. 44.1(a)(1); s*ee also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010).

[12]The Motion for New Trial does not mention the fact that the plaintiffs attached a copy of Dr. Tomaszek's deposition transcript to their Motion to Exclude Texas Medical Board Orders as Exhibit C, which they filed on September 30, 2021. The Motion for New Trial also does reference Dr. Tomaszek's deposition transcript, which is at page 329-400 of the Clerk's Record.

[13]Tex. R. App. P. 44.1(a).

Without the benefit of an offer of proof, even were we to determine that the trial court erred in excluding the deposition excerpts, we could not say that a ruling excluding Dr. Tomaszek's deposition operated as a death penalty sanction without a more fully developed record than the one before us here.[14] We hold the trial court did not abuse its discretion by excluding enforcing its Scheduling Order when it gave the Schulzes the opportunity to fully develop a record sufficient to show that without the doctor's testimony the plaintiffs would have no other evidence to tie William's surgery to the rear-end collision with Cardenas.[15] Because the Schulzes have not shown that the sanction was a death penalty sanction, the trial court's judgment is affirmed.

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on October 12, 2023
Opinion Delivered March 28, 2024

Before Golemon, C.J., Horton and Wright, JJ.

---

[14]*See* Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a), *Farrell Care Ctr.,* 2016 Tex. App. LEXIS 13794, at *36.
[15]*Id.*