In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00097-CV**

_____

**IN THE MATTER OF THE ESTATE OF
HENRY MATTHEW PLATT, DECEASED**

**On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 40130**

**MEMORANDUM OPINION**

J'Nette Allred appeals the trial court's order revoking her Letters of Administration in the Matter of the Estate of Henry Matthew Platt.[1] In three issues, J'Nette complains about the trial court's evidentiary rulings. For the reasons discussed below, we affirm.

---

[1]For ease, we will refer to the decedent and his family members by their first names throughout the appeal.

Background

Henry Matthew Platt died on November 10, 2021. He was predeceased by his parents, Jack Platt and Dorothy Platt. At the time of his death, he was survived by three siblings: J'Nette Platt Allred, James Mark Platt, and Shirley Nell Waggoner Russell.[2] Henry was also survived by a niece named Angela Clemmons. On January 31, 2022, J'Nette filed an Application for Letters of Administration alleging that Henry died intestate. The court signed an order on April 20, 2022, appointing J'Nette as independent administrator of Henry's estate. Shirley and James subsequently filed pleadings contesting J'Nette's appointment.

On March 15, 2023, Angela filed an Application to Probate a Holographic Will and for Issuance of Letters Testamentary. The application alleged that Henry left a valid will dated June 24, 2012, which was never revoked and named Angela to serve as independent executor. The application also asserted that the will was wholly in Henry's handwriting and that his "signature is subscribed thereto." The holographic will leaves Henry's entire estate to Angela and appoints Angela to serve as independent executor without bond.

On February 14, 2024, the trial court held a bench trial on the will contest. Several witnesses testified. Angela testified that Henry is her uncle and was like a

_____

[2]J'Nette Platt Allred's name is Dorothy J'Nette Platt Bower West Allred according to her siblings' response, but we refer to her as J'Nette.

"second father" to her. In 2012, Henry lived with Angela in Abilene because Henry was "having a hard time making ends meet" after the death of his parents, and Henry "had done so much for me during my life." Angela claimed familiarity with Henry's handwriting after seeing letters and cards he had written and watching him write his signature. Angela testified that she recognized the handwriting in the body of the will and that it appeared to be Henry's handwriting. Angela further testified that she recognized the signature at the bottom of the will and that it was Henry's signature as it was in 2012.

William Candler testified by deposition. William knew Henry for about twenty years. William explained that Henry knew he was ill and would pass away. William, who worked in real estate, knew "what happens when people die without wills[,]" and knew that Henry had an "intense dislike for [his] brother[,]" suggested that Henry should write a handwritten will. After researching how to draft a handwritten will, Henry asked William to use his desk and wrote the holographic will. William testified he witnessed Henry write the handwritten will.

William testified that the entire will was in Henry's handwriting and contained Henry's signature. William further testified that Henry signed the will in his presence. William was not surprised that Henry's will left all his assets to Angela as William explained that Henry was "adamant he wanted her to have it because he had been living with her and she had spent money taking care of him." After writing and

3

signing the will, Henry handed it to William in William's office. William put the will in a file and then "kinda forgot about it." William kept the will in his filing cabinet from June 24, 2012, until he relinquished possession of it. Nothing occurred which led William to believe that Henry replaced or revoked the handwritten will.

Vincent Jason Lour Blanc also testified by deposition. Vincent met Henry through rock clubs and the pair developed a friendship. During their friendship, Vincent saw Henry's handwriting and his signature. Looking at the handwritten will dated June 24, 2012, Vincent testified that the will contains Henry's handwriting and Henry's signature.

Curt Baggett is a handwriting expert hired by J'Nette. When Baggett was called to testify, Angela's counsel requested and obtained the trial court's permission to question Baggett on voir dire to examine whether he was qualified to provide expert testimony. On voir dire, Baggett testified he never met Henry, nor did he meet Henry's parents. Baggett indicated he was asked to examine several documents in this case. The first document, identified as "HMPQ1" was the holographic will dated June 24, 2012, which Baggett compared to other documents identified as "KI, K2, K3, K4, and K5[.]"Baggett agreed that HMPQ1 contains the name of Henry Matthew Platt but that documents K1, K2, K3, K4, and K5 do not. Instead, those documents contain the names of Jack Platt and Dorothy Platt. Baggett conceded he did not examine any other documents containing the handwriting of Jack Platt or

4

Dorothy Platt and never observed Henry, Jack, or Dorothy write or sign their individual names. Baggett testified that he examined documents K1 through K5 which had Jack Platt's signature on them. According to Baggett, he understood at the time he examined the documents that Jack Platt's signatures were actually written by Henry, but he admitted those documents did not contain Henry's name or Henry's purported signature.

Citing Texas Rules of Evidence 703 and 705, Shirley's counsel then objected to Baggett's testimony as an expert on the grounds his opinions were not "based on a good foundation of data" because he did not examine any documents with Henry's name on them other than the handwritten will. Shirley's counsel also objected that Baggett could not offer lay opinions because he had no personal knowledge of Jack's, Dorothy's, or Henry's handwriting. Angela's counsel joined in Shirley's objection that Baggett's testimony as an expert lacked sufficient foundation since Baggett had not shown that he compared Henry's handwriting to the will in question, and the signatures Baggett analyzed were those of Jack and Dorothy, not Henry.

J'Nette's counsel responded that the trial testimony had already established that Jack and Dorothy were blind and Henry took care of them, so the documents were provided for examination because Henry had signed them on Jack's and Dorothy's behalf. J'Nette's attorney conceded that Baggett did not analyze any documents containing Henry's signature but argued that J'Nette had witnessed

Henry signing one of the documents for his parents and offered to call J'Nette to testify as much. The trial court sustained the objection "for right now" but allowed J'Nette to testify before continuing with Baggett's testimony.

J'Nette testified that documents K1 through K4 are Travelers Express money orders paid to Republic National Bank of Dallas as payments on a mobile home and that document K5 is the mobile home contract. J'Nette explained that the names on the document were Jack H. Platt and Dorothy H. Platt, but that the signatures were Henry's handwriting. Angela's counsel objected that there was a lack of foundation for J'Nette's opinion testimony, and the trial court sustained the objection. J'Nette then explained that she, James, Shirley, and Henry were all in their parents' presence when the mobile home documents were signed by Henry because both of her parents were blind. According to J'Nette, Henry "signed everything for them[.]" J'Nette explained that she also knew Henry's handwriting because he signed her report cards for school. She confirmed that she was there when the traveler's checks were signed, and that Henry signed them as his father, Jack.

J'Nette's counsel then requested to continue with Baggett's testimony, and the following colloquy occurred:

> [ANGELA'S COUNSEL]: Your Honor, first they need to offer into evidence the documents that they're attempting to and to which I'm going to object that there are no business record affidavits or any other document authenticating these business records, other than her testimony, which is hearsay, that the signatures on the document are by the decedent is hearsay.

[J'NETTE'S COUNSEL]: It wouldn't be hearsay if she was there, Your Honor.

[ANGELA'S COUNSEL]: It's hearsay that his signature was being used on those documents for that business purpose and there is no business record affidavit from the mobile home company or from the bank where these documents were apparently obtained. So the documents have not been authenticated, and they contain hearsay in that they're saying that Henry signed them. That is hearsay.

THE COURT: All right. As to hearsay, I'm – I'm going to have to agree with that. I'll sustain that.

Shirley's counsel then argued that in light of the trial court's ruling that the comparison documents were inadmissible, there was no foundation for Baggett's testimony. The trial court agreed and granted the objection. J'Nette was then asked about the handwriting on the holographic will and testified that it contained "printing" but that she had "never seen Henry print anything." She testified that "Henry handwrote everything and he had beautiful handwriting… It was always in cursive." She did not believe anything in the holographic will "look[ed] like anything of his handwriting." She also testified she had no knowledge of Henry's creating a will.

After the conclusion of the trial, the court signed an Order Probating Will, Granting Independent Administration and Authorizing Letters Testamentary, and Revoking Prior Letters of Administration on February 16, 2024. The order found that the will executed on June 24, 2012 was executed with the formalities and solemnities and under the circumstances required by law to make it a valid will; that

7

the will was not self-proved, but was proved from the sworn testimony in open court of two persons familiar with the signature of the Decedent; and that the will has not been revoked by the Decedent. The Order appointed Angela Clemmons as Independent Executor of the Will, granted her Letters Testamentary, revoked the Order Authorizing Independent Administration and Letters of Independent Administration dated April 20, 2022 granting letters to J'Nette Allred, and revoked all letters of administration issued to her. On the same day, the trial court signed an Order to Remove Independent Administrator which removed J'Nette Allred as Independent Administrator of the estate of Henry Matthew Platt.

J'Nette appealed raising three issues for our review. First, J'Nette complains that the trial court erred in finding that her testimony regarding Henry's signature on the traveler's checks and mobile home contract was hearsay. In her second issue, J'Nette complains the trial court erred in ruling Exhibits K1 through K5 were inadmissible. Lastly, J'Nette complains that the trial court erred in excluding Baggett's testimony.

Analysis

To preserve a complaint for appellate review, the record must show, among other things, that a complaint was made to the trial court by a timely objection, motion or request that complied with the Texas Rules of Evidence or the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 33.1(a)(1)(B). "A party may claim error

8

in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and…if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2).

J'Nette complains that the trial court found that her testimony about documents K1 through K5 was hearsay, but since Angela objected both to J'Nette's testimony and the documents themselves, the record is unclear regarding which objection the trial court sustained. What is clear from the record is that none of J'Nette's testimony was actually excluded as hearsay, because the hearsay objections were lodged and sustained after J'Nette had finished testifying about documents K1 through K5, and Angela never requested the trial court to strike or disregard any portion of J'Nette's testimony. Therefore, we conclude that with respect to J'Nette's first issue, nothing has been preserved for our review. Accordingly, we overrule J'Nette's first issue.

The record also does not show that J'Nette made an offer of proof regarding documents K1 through K5. Although Angela's counsel suggested that before recalling Baggett, J'Nette needed to offer documents K1 through K5 into evidence, the documents were not marked as exhibits, were not offered into evidence, and are not included in the Reporter's Record on appeal. As indicated above, Angela's counsel objected not only that the documents were hearsay but also that J'Nette's

9

testimony was hearsay, and it is unclear which objection the trial court sustained. "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Schulze v. Cardenas*, No. 09-22-00001-CV, 2024 Tex. App. LEXIS 2225, at *3 (Tex. App.—Beaumont Mar. 28, 2024, no pet.) (mem. op.) (internal quotation marks omitted) (citing *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331 (Tex. App.—Dallas 2008, no pet.)). Because J'Nette did not offer the documents into evidence, she did not preserve her second issue for appellate review. *See Threet v. Elbert*, No. 09-22-00065-CV, 2023 Tex. App. LEXIS 2771, at *21 (Tex. App.—Beaumont Apr. 27, 2023, no pet.) (mem. op.). We overrule J'Nette's second issue.

Lastly, the record does not show what the substance of Baggett's testimony would have been had he testified. Even if we were able to discern from context that Baggett would have testified that in his opinion the handwriting in the holographic will did not match Henry's handwriting in the comparison documents, Baggett's testimony would not have been conclusive; the trial court would have been required to assess Baggett's credibility and weigh his testimony against that of the witnesses who testified the handwriting and signature in the holographic will were Henry's. Without an offer of proof, we cannot assess whether the exclusion of Baggett's testimony "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1); *In re Brown*, No. 09-10-00589-CV, 2012 Tex. App. LEXIS 8136,

10

at *25 (Tex. App.—Beaumont Sep. 27, 2012, pet. denied) (mem. op.) ("[W]ithout an offer of proof we can never determine whether the exclusion of the evidence was harmful."). We overrule J'Nette's third issue.

## Conclusion

Having overruled all of J'Nette's issues, we affirm the trial court's order.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 22, 2025
Opinion Delivered January 29, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.