**William BOBBORA and James Theodore Jongebloed, Appellants,**

**v.**

**UNITRIN INSURANCE SERVICES f/k/a Trinity Universal Insurance Company, Appellee.**

No. 05–06–01624–CV.

Court of Appeals of Texas, Dallas.

April 24, 2008.

Rehearing Overruled June 4, 2008.

Richard N. Countiss, Countiss Law Firm, Anthony Laurent Laporte, Hanszen & Laporte, Houston, for Appellants.

Robert T. Sherwin, April F. Robbins, Brackett & Ellis, Fort Worth, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MAZZANT.

## OPINION

Opinion By Justice MOSELEY.

Unitrin Insurance Services f/k/a Trinity Universal Insurance Company sued William Bobbora and James Theodore Jongebloed for breach of indemnity agreements, and obtained a jury verdict against Jongebloed. In his first issue, Jongebloed contends the trial court erred by striking his expert witness. In his second issue, Jongebloed challenges an instruction in the jury charge. For the reasons set forth herein, we conclude Jongebloed has failed to preserve his first issue for review, and we resolve Jongebloed's second issue against him. We affirm the trial court's judgment.

## I. BACKGROUND

Boborra and his wife owned some convenience stores that sold motor vehicle fuel. The stores bought bonds from Unitrin under which Unitrin, as surety, guaranteed the payment of motor vehicle fuel taxes owed by the stores. Bobbora and Jongebloed signed indemnity agreements by which they agreed to indemnify Unitrin for "any and all disbursements made by [Unitrin] in good faith" under those bonds. At issue here are three of these indemnity agreements.

The State claimed that the stores failed to pay their fuel taxes, and the State seized some store accounts and assets. Later, the State sought payment from Unitrin under the bonds for more than $500,000 for unpaid fuel taxes. Unitrin sought indemnity from Bobbora and Jongebloed and investigated the amounts owed. The State eventually sued Unitrin. Unitrin settled the suit regarding some of the stores. The State obtained a judgment regarding other stores, and Unitrin reached a settlement with the State as to that judgment.

Unitrin sued Bobbora and Jongebloed alleging breach of the indemnity agreements, seeking just over $500,000 for the amounts it paid the State under the bonds. It also sought expenses in connection with the settlement of the claims under the bonds, prejudgment interest, and attorney's fees. Bobbora and Jongebloed initially answered, asserting "defenses and pleas." They also asserted counterclaims, one of which was "breach of duty of good faith and fair dealing," arising from Unitrin's "failure to properly evaluate and investigate [the State's] claim ... and the amount of credits and offsets due [their companies]...." Another counterclaim was "bad faith/fraud."

Bobbora filed for bankruptcy protection, automatically staying the suit. The suit was abated and closed, but subsequently was reopened and returned to the docket.[1] Jongebloed alone filed a second amended answer in which no counterclaim was asserted. However, Jongebloed asserted the "defenses" of bad faith, lack of good faith, and breach of the duty of good faith and fair dealing, and he asserted a "credit for payments made." Before trial, Jongebloed designated Terry McGee as an expert witness. Unitrin objected and challenged the admissibility of his opinion. After a hearing, the trial court signed an order striking McGee.[2]

The case proceeded to a jury trial. The jury found that Unitrin acted in good faith in making payments to the State under the bonds and that Jongebloed failed to comply with the indemnity agreements. (No liability question was submitted as to Bobbora.) The jury awarded Unitrin just over $500,000.00 as damages for Jongebloed's failure to comply with the indemnity agreements and just over $29,000.00 for investigating and settling claims under the

bonds. The trial court rendered judgment on the jury's verdict in favor of Unitrin and against Jongebloed in the amount of $529,948.02; the trial court also awarded pre- and postjudgment interest and attorney's fees. Appellants' motion for new trial was denied. This appeal followed.[3]

## II. EXCLUSION OF EXPERT WITNESS

■ In his first issue, Jongebloed challenges the trial court's order striking his expert witness, McGee. Jongebloed argues his designation of McGee was "procedurally correct" and that McGee was qualified to testify and his testimony was both relevant and reliable. Unitrin argues, in part, that Jongebloed failed to preserve this error for review by failing to make an offer of proof of McGee's testimony.

■ To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *See Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex.App.-Houston [1st

1. In an Order Granting Relief from Stay, the bankruptcy judge modified the automatic stay "to authorize and permit [Unitrin] to proceed to trial in [this case] against Defendant James Theodore Jongebloed." The bankruptcy judge further ordered "that if the Trustee elects to pursue the Debtor's counterclaims against [Unitrin] or abandons the counterclaims or sells the counterclaims to third party [sic], [Unitrin] shall have the right without further order of this Court to liquidate its claim for purposes of offset." The bankruptcy judge also ordered that Unitrin "may take the deposition of [Bobbora] in [this suit] under the provisions of the Texas Rules of Civil Procedure without further order of this Court." The case was reopened and returned to the active docket "so that [Unitrin] can proceed against Defendant James Theodore Jongebloed."

2. No record of this hearing was made.

3. Although the style of the case continued to include Bobbora, the only defendant specifically mentioned in subsequent pleadings was Jongebloed. The judgment states that Jongebloed appeared for trial; it does not so state as to Bobbora, and indeed does not mention Bobbora. The judgment recites that "it finally disposes of all claims and all parties and is appealable" and "[a]ll relief not expressly granted herein is denied." We conclude from the record Bobbora was not part of the case that was tried and that the judgment is final. *See Moritz v. Preiss*, 121 S.W.3d 715, 719 (Tex.2003) (applying presumption of finality to judgments following trial on merits to judgment not naming all defendants). Both Bobbora and Jongebloed are listed on the notice of appeal and in appellants' brief as appellants. Therefore, we retain the style of the case, as they do, but our opinion addresses the complaints on appeal only as to Jongebloed because no error would result in harm to Bobbora.

Dist.] 2001, pet. denied). While the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful. *See id.* at 608 Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal. *Id.* at 606. *See* TEX.R. EVID. 103(a), (b). An offer of proof preserves error for appeal if: (1) it is made before the court, the court reporter, and opposing counsel, outside the presence of the jury; (2) it is preserved in the reporter's record; and (3) it is made before the charge is read to the jury. *Fletcher,* 57 S.W.3d at 607. When no offer of proof is made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception. *See Sw. Country Enters., Inc. v. Lucky Lady Oil Co.,* 991 S.W.2d 490, 494–95 (Tex.App.-Fort Worth 1999, pet. denied). A formal bill of exception must be presented to the trial court for its approval, and, if the parties agree to the contents of the bill, the trial court must sign the bill and file it with the trial court clerk. *Bryan v. Watumull,* 230 S.W.3d 503, 516 (Tex.App.-Dallas 2007, pet. denied). *See* TEX.R.APP. P. 33.2(c). Failure to demonstrate the substance of the excluded evidence results in waiver. *See Sw. Country Enters., Inc.,* 991 S.W.2d at 494. *See also* TEX.R.APP. P. 33.1(a)(1)(B).

▮ As noted above, the record on appeal does not contain a reporter's record of the hearing on the challenge to McGee. The clerk's record contains an unsworn "Expert Report Prepared by Terry L. McGee" that was attached to Jongebloed's Second Supplemental Disclosure Responses. Jongebloed attached this discovery as part of his filed response to Unitrin's chal-

lenge to McGee. However, filing a document with the trial court is not a sufficient offer of proof. *See Malone v. Foster,* 956 S.W.2d 573, 577 (Tex.App.-Dallas 1997) (holding deposition on file with trial court not sufficient to make proper bill of exception; citing *McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 187 (Tex. 1984)), *aff'd,* 977 S.W.2d 562 (Tex.1998). There is nothing in the record showing an offer of proof, a bill of exception, or that the expert report was brought to the trial court's attention. Without an offer of proof, Jongebloed has failed to preserve his complaint for review. *See* TEX.R. EVID. 103; TEX.R.APP. P. 33.1(a)(1)(B); *Fletcher,* 57 S.W.3d at 607. We need not address Jongebloed's first issue.

## III. JURY CHARGE INSTRUCTION

In his second issue, Jongebloed argues the trial court gave an improper instruction in Question No. 1, specifically, the italicized language below:

Did [Unitrin] act in good faith in making payments to the State of Texas under the respective bonds?

"Good faith" refers to conduct which is honest in fact, free of improper motive or wilful ignorance of the facts at hand. *It does not require proof of a "reasonable" investigation by the surety.*

## A. Applicable Law and Standard of Review

▮ A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. An instruction is proper if it: (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *In re Commitment of Almaguer,* 117 S.W.3d 500, 502 (Tex.App.-Beaumont 2003, pet. denied) (citing *Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166 (Tex.2002)).

Rule 277 affords the trial court considerable discretion in deciding what jury instructions are necessary and proper. *Id.* (citing *Williams*, 85 S.W.3d at 166). We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).

## B. Discussion

■ At trial, Jongebloed objected as follows to the inclusion of the second sentence:

> [W]e have an objection to the definition of good faith that's being used. We believe the good faith is defined only by the first sentence that's there....
>
> The language which is included after that, although it is referenced by the State of Texas, by the Texas Supreme Court in the *Associated Indemnity* case [that is, *Associated Indemnity Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285 (Tex.1998)], it seems to be only instructive. It's not a definition....

The trial court overruled this objection. In his motion for new trial, Jongebloed argued that the second sentence was an incorrect statement of the law, and, even if correct, it was an improper comment on the weight of the evidence because it was surplusage.

The instruction in Question No. 1 was taken verbatim from *Associated Indemnity Corp.* In that case, the supreme court considered a surety's duty of good faith to its principal. It concluded that, although no such duty existed at common law, such a duty did exist as a contract condition in the indemnity agreement before it where the indemnitee was given express authority to settle claims made in good faith. *See id.* at 278. The issue before the court was a sufficiency of the evidence challenge to the trial court's finding that the surety "acted in bad faith in investigating and settling the claims" with the owner. *Id.* at 282. The court analyzed "the appropriate definition of 'good faith' (and conversely, 'bad faith') under these circumstances." *Id.* at 284. The court considered whether a reasonable investigation was required and rejected that argument, stating, "[I]n the surety context[,] bad faith requires more than an unreasonable or negligent investigation; it requires wilful misconduct or improper motive." *Id.* Relying on cases concerning settlement of claims by indemnitees in the commercial paper context, the court said:

> We hold that "good faith" in the surety agreement before us refers to conduct which is honest in fact, free of improper motive or wilful ignorance of the facts at hand. *It does not require proof of a "reasonable" investigation by the surety.* Stating the proposition conversely for purposes of our evidentiary review for this particular case, "bad faith" means more than merely negligent or unreasonable conduct; it requires proof of an improper motive or wilful ignorance of the facts.

*Id.* at 285 (emphasis added).

Here, Bobbora and Jongebloed agreed to indemnify Unitrin for "any and all disbursements made by [Unitrin] in good faith" under the bonds. The trial court's submission assisted the jury in understanding the legal meaning of "good faith" in the surety context and accurately stated the law from *Associated Indemnity Corp. See id.* Also, it is supported by Jongebloed's pleading that Unitrin settled the claims with the State giving rise to the claims at bar "without proper justification and that such settlements were unreasonable when made" and evidence of Unitrin's investigation of the amounts owed. Accordingly, we conclude that, under the facts of this case, submission of the second

sentence meets the standard for submitting a proper instruction or definition. *See In re Commitment of Almaguer,* 117 S.W.3d at 502.

■ In reaching this conclusion, we necessarily reject Jongebloed's argument that the second sentence "directly contradicts the court's definition of good faith." He posits "what is wilful ignorance if it is not the failure to make a reasonable effort to learn the facts?" The Texas Supreme Court has answered this question adversely to Jongebloed in the surety context, holding that the indemnitee's discretion is "limited only by the bounds of fraud." *Assoc. Indem. Corp.,* 964 S.W.2d at 284 (quoting *Cent. Sur. & Ins. Corp. v. Martin,* 224 S.W.2d 773, 776–77 (Tex.Civ.App.-Beaumont 1949, writ ref'd)). As explained more fully in outlining the standards for good or bad faith in the commercial paper context:

> (1) The test is good or bad faith and not diligence or negligence. ( [2] ) Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to make such inquiry, is not evidence of bad faith. (3) Even gross negligence is not the same thing as bad faith, although it may be evidence tending to prove bad faith. (4) To constitute evidence of bad faith, the facts known to the taker must be such as reasonably to form the basis for an inference that in acquiring the instrument with knowledge of such facts he acted in dishonest disregard of the rights of defendant. (5) Wilful ignorance is the equivalent of bad faith and bad faith may be shown by a wilful disregard of and refusal to learn the facts when available and at hand.

*Citizens Bridge Co. v. Guerra,* 152 Tex. 361, 371, 258 S.W.2d 64, 69 (1953) (quoted in part in *Associated Indemnity Corp.,* 964 S.W.2d at 285).

■ We also necessarily reject Jongebloed's argument that the complained-of sentence in the charge is surplusage because the jury was not asked, in Question No. 1, whether Unitrin conducted a reasonable investigation. The issue being tried was Unitrin's good faith, and the instruction as worded informed the jury that whether the surety conducted a reasonable investigation was not part of that inquiry.

Finally, Jongebloed argues the italicized sentence in the charge is a comment on the weight of the evidence. However, as noted above, Jongebloed did not object to the charge on this ground before the court read the charge to the jury. Rule of civil procedure 272 requires a party to object to the court's charge, either orally or in writing, before the court reads the charge to the jury. TEX.R. CIV. P. 272; *Mitchell v. Bank of Am., N.A.,* 156 S.W.3d 622, 627 (Tex.App.-Dallas 2004, pet. denied) (citing *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992)). If the party does not present the objection to the court before the court reads the charge to the jury, he waives his objection. TEX.R. CIV. P. 274; *Mitchell,* 156 S.W.3d at 627; *Kirkpatrick v. Mem'l Hosp. of Garland,* 862 S.W.2d 762, 769 (Tex.App.-Dallas 1993, writ denied). We conclude Jongebloed has failed to preserve this complaint for review.

We conclude the complained-of sentence meets the standard of a proper instruction or definition. Therefore, we conclude the trial court did not abuse its discretion in including this sentence in the definition of "good faith." We resolve Jongebloed's second issue against him.

## IV. CONCLUSION

Having concluded Jongebloed failed to preserve his first issue for review and

resolved Jongebloed's second issue against him, we affirm the trial court's judgment.