# NO. 12-23-00255-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AXION SALES FORCE, LLC D/B/A* *AVCO ROOFING,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 2* |
| *RYAN MOORE,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Axion Sales Force, LLC d/b/a AVCO Roofing (AVCO) appeals the trial court's judgment in favor of Appellee, Ryan Moore. In five issues, AVCO challenges the trial court's denial of its motions for directed verdict and for judgment notwithstanding the verdict, failure to impanel a 12-person jury, refusal to include AVCO's requested definition in the jury charge, and evidentiary rulings. We affirm.

## BACKGROUND

Moore worked for AVCO, a commercial and residential roofing company, from September 2019 until his employment was terminated in November 2021. Subsequently, Moore

sued AVCO for sales commissions he believed he was owed for commercial roofing projects on which he served as either an account manager or sales manager, in the amount of $354,878.04.

Immediately prior to the commencement of voir dire, counsel for both parties informed the trial court of their agreement and understanding that the jury would consist of twelve individuals, rather than six. This issue not having arisen prior to trial, neither attorney was able to immediately locate the statutory authority providing for a twelve-person jury in a trial before a county court. Counsel for AVCO acquiesced to proceeding with a six-person jury, while counsel for Moore confirmed on the record the request for a twelve-person panel. The trial court subsequently pronounced that "it's the Court's understanding that in the county court, a six-person jury is provided, and so the Court will proceed on that basis."

At trial, Moore testified that in 2016, he began working at AVCO as a salesman in the residential roofing department on a strictly commission basis. In 2019, AVCO offered him a position in the commercial roofing department. Alexander Zimmerman, who managed AVCO's commercial roofing division when Moore began working in that department, presented Moore with a document setting forth the pay structure for the new position, which included a base salary as well as percentage-based commissions for both jobs Moore procured directly and jobs procured by employees Moore supervised.[1] During his employment, Moore procured a number of commercial roofing contracts, including one large contract with Green Acres Baptist Church located in Tyler, Texas. However, at the time AVCO terminated Moore's employment in 2021, Moore testified that he had not received the commission payments to which he was entitled for multiple completed jobs, and that there were ongoing jobs for which he procured contracts and for which he would be owed commission payments in the future. Before his termination, Moore compiled a spreadsheet estimating the commissions he believed he was owed using AVCO's project database, although Moore admitted that the total invoice number for the Green Acres project was an educated guess.[2]

Zimmerman testified that AVCO hired him to establish and manage its commercial roofing department in 2017, with "100 percent authority" to develop processes and procedures for that department, although he would summarize his actions at a weekly meeting with the executive team. He and Heath Hicks, AVCO's owner and CEO, agreed to ask Moore to move to

---

[1] This document was subsequently admitted into evidence as Moore's Exhibit 1.

[2] This spreadsheet was subsequently admitted into evidence as Moore's Exhibit 8.

2

the commercial department in 2019, which came with a change in Moore's compensation structure from a "1099 sales rep" to a "W-2 employee sales rep with a base salary and commission structure." Zimmerman created the document in evidence as Exhibit 1 and described it as "laying out the sales commission structure and how [Moore] was compensated both for his own sales and then the sales that were reported to him." He stated that both account managers and sales managers earned their commissions at the time the contract was signed and received incremental commission payments when AVCO received an installment payment from the client. Zimmerman knew of no policy within the commercial department stating that an employee would no longer receive commissions post-termination. He further testified to several specific contracts and overall client relationships which, but for Moore's efforts, he did not believe would have existed.

Dustin McGhee, formerly an administrative employee at AVCO, stated that following Moore's termination, someone at AVCO asked him to create a spreadsheet detailing the potential commissions owed to Moore, the total of which he recalled as in the range of $180,000.00. However, he learned that Moore's commissions would not be paid "right then" or "as the normal proceeding of commissions would have followed." McGhee explained that the JobNimbus platform, a software program for budget tracking individual projects, contained data on the invoices submitted to the client, payments made by the client, and commissions paid out. He further stated that AVCO received a check from Green Acres "in the ballpark of a million dollars" in November of 2021, but no commission check was processed for Moore.

Hicks testified that he purchased AVCO from the previous owner in 2016 or 2017. Hicks was unfamiliar with Exhibit 1 before Moore brought this action but believed that it was a "memo of sorts" to assist the accounting department with calculating commissions. Hicks explained that commissions for account managers were paid out as AVCO received money from the client. However, sales manager commissions were not paid out until a job was fully completed, or "closed." At the time of Moore's termination, he had already received his "account manager" commission payment on "every dollar" that AVCO received from the relevant clients. However, for jobs that were not "completely closed" by that time, Moore had not yet received his "sales manager" commission. Hicks further testified to AVCO's company policy that terminated employees received no commissions for jobs that were not closed as of the date of termination. Instead, in what Hicks described as a procedure standard to the roofing industry, the jobs would

be reassigned, and the new account manager would receive the commission payments going forward. But, he could not locate documentation of this policy "specific to Mr. Moore."

Vance Garvey, a current AVCO employee, testified that both he and Moore had relationships with Green Acres, and they both attended meetings with Green Acres personnel in the process of procuring the roofing contract. At the time, Garvey was unsure how the commission would be split between himself and Moore but understood there would be a split of some kind. Garvey confirmed collecting a "million dollar check" from Green Acres in December 2021, and receiving a commission payment every time Green Acres made a payment. However, he believed that those payments were merely "advances" on a future commission owed to him, because the job was not complete. Garvey stated his understanding that "a commission is not earned until the close of the job," although he did not testify as to the basis of this understanding.

Following Garvey's testimony and the conclusion of Moore's case in chief, AVCO moved for a directed verdict, which the court denied. Thereafter, Stephanie Osborn, vice president of AVCO's commercial division, testified about the payment structure from a client to AVCO following the signing of a contract. She explained that AVCO receives a deposit payment, another payment after materials are delivered to the location, sometimes a third payment at 50% completion, and then a final payment once the project is complete. The account manager for the project receives a commission payment following AVCO's receipt of each payment from the client. However, sales managers only receive a commission payment once the project is complete, because "the sales manager's responsibility to that project is not completed or fulfilled until the project is completed." Osborn remembered Green Acres paying AVCO a check for approximately one million dollars in November or December of 2021 and affirmed that AVCO did not make a commission payment to Moore in connection with this check. Moore's trial counsel then asked Osborn to review several of the jobs listed on Moore's spreadsheet of projects for which he claimed AVCO owed him commission payments. For more than ten of the listed jobs, Osborn confirmed that the project was completed and AVCO received payment from the client. She testified that Moore received "one last check" following his termination, but she was unaware what commissions that check represented.

The jury answered affirmatively to the questions "Did Ryan Moore and AVCO Roofing enter into an agreement to pay Ryan Moore commissions on sales for AVCO Roofing?" and

4

"Did AVCO Roofing fail to comply with the agreement?" The jury further found that Moore performed compensable work for AVCO for which he was not compensated, and that AVCO had in its possession money belonging to Moore. Thereafter, AVCO moved for judgment notwithstanding the verdict. The trial court denied AVCO's motion and entered a judgment awarding Moore $200,000.00 in damages for his breach of contract claim, as well as attorney's fees and pre- and post-judgment interest. This appeal followed.

<u>EVIDENTIARY RULINGS</u>

In its fifth issue, AVCO alleges that the trial court abused its discretion in admitting a damages exhibit prepared by Moore and excluding evidence regarding Moore's competing roofing business.[3]

**Standard of Review**

We review a trial court's rulings on the admission or exclusion of evidence under an abuse of discretion standard. ***Broders v. Heise***, 924 S.W.2d 148, 151–52 (Tex. 1996). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. ***In re Cerberus Capital Mgmt., L.P.***, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). We will uphold the trial court's ruling if there is any legitimate basis for it. *See **Owens-Corning Fiberglass Corp. v. Malone***, 972 S.W.2d 35, 43 (Tex. 1998).

Erroneous exclusion of evidence requires reversal only if the error probably resulted in rendition of an improper judgment. ***State v. Cent. Expressway Sign Assocs.***, 302 S.W.3d 866, 870 (Tex. 2009). In determining whether the error was harmful, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted or excluded. ***Bay Area Healthcare Grp., Ltd. v. McShane***, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam); ***City of San Antonio v. Kopplow Dev., Inc.***, 441 S.W.3d 436, 442–43 (Tex. App.—San Antonio 2014, pet. denied). A reviewing court will not reverse a judgment because a trial court erroneously excluded evidence when the excluded evidence is cumulative or not controlling on a material issue dispositive to the case. *See **Tex. Dep't of Transp. v. Able***, 35

---

[3] We address Avco's evidentiary issues before we examine its legal sufficiency points of error because a legal sufficiency challenge may be sustained when the record discloses that the court is barred by rules of evidence from giving weight to the only evidence offered to prove a vital fact. *See **City of Keller v. Wilson***, 168 S.W.3d 802, 823 (Tex. 2005).

S.W.3d 608, 618 (Tex. 2000); *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 441 (Tex. App.—Houston [14th Dist.] 2016, no pet).

**Admission of Moore's Damages Chart**

AVCO asserts that the trial court erred in admitting Moore's Exhibit 8, a spreadsheet created by Moore listing multiple projects he worked on during his employment with AVCO. The spreadsheet lists the "invoice amount" for each project, the amount paid to Moore at the time of trial, and his calculation of the remaining amount owed to him. The spreadsheet also included prospective projects for which no invoice amount was available, representing potential future commissions owed to Moore should said projects move forward. At trial, Moore testified that he made the chart before AVCO terminated his employment and after signing a contract for a job with "Green Acres Tyler," but could not approximate a date, month, or season of the year. He further stated that the $3,200,000 invoice amount for the Green Acres job was a "guesstimation," although the invoice amounts for the other projects were taken from AVCO's database at an unspecified time.

To preserve error for appellate review, a timely, specific objection must be made. TEX. R. APP. P. 33.1. This rule is underscored by "important prudential considerations," including conservation of judicial resources. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 518 (Tex. 2018). To protect these important prudential considerations—including those of judicial economy—we may review the record sua sponte for preservation of error. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review..."); *Federal Deposit Ins. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) ("When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue."); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (describing error preservation as "threshold to appellate review"); *Alikhan v. Alikhan*, No. 03-19-00515-CV, 2021 WL 3085844, at *3 (Tex. App.—Austin July 22, 2021, pet. denied) (mem. op.). Moreover, to preserve error on an evidentiary issue, the complaint made on appeal must comport with the objection made before the trial court. *Bonds v. Mayes*, No. 05-01-01593-CV, 2002 WL 1981375, at *2 (Tex. App.—Dallas Aug. 29, 2002, no pet.) (mem. op.) (citing *Religious of Sacred Heart of Texas v. City of Houston*, 836 S.W.2d 606, 614 (Tex. 1992)).

At trial, AVCO objected to the admission of Exhibit 8 on the basis that the "entire exhibit is based on hearsay." However, AVCO now argues on appeal that the trial court abused its

discretion in admitting Exhibit 8 because it was (1) not properly authenticated and (2) "inherently unreliable." AVCO did not make this objection before the trial court. Because AVCO's complaint on appeal does not comport with its objection at trial, it is waived. *See Religious of Sacred Heart of Texas*, 836 S.W.2d at 614. We overrule this portion of AVCO's fifth issue.

**Exclusion of Evidence Regarding Moore's Competing Roofing Business**

AVCO argues that the trial court abused its discretion by sustaining Moore's pretrial relevance objection to evidence related to "Moore's competitive roofing company, Project One Roofing." Although AVCO admits that Moore did not bring a claim for wrongful termination, it contends that the facts surrounding Moore's termination were "highly relevant" because "the alleged breach of contract cause of action that Moore did bring against AVCO deals with alleged commissions that would not have become 'owed' 'due' or 'earned' until after his termination based on how commissions are paid." We first note that Hicks was permitted to testify at trial that Moore, along with unspecified other individuals, started a competing roofing company before his termination by AVCO. Second, to the extent AVCO asserts that it was barred from presenting additional evidence on this topic, it waived this complaint.

To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *Self v. W. Cedar Creek Mun. Util. Dist.*, No. 12-20-00082-CV, 2021 WL 56213, at *2 (Tex. App.—Tyler Jan. 6, 2021, no pet.) (mem. op.) (citing *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 334 (Tex. App.— Dallas 2008, no pet.)). While the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful. *Id.* at 335. Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record to complain of the exclusion on appeal. *See* TEX. R. EVID. 103(a); *Bobbora*, 255 S.W.3d at 335. When no offer of proof is made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exceptions to preserve the evidence for the appellate record. *See* TEX. R. APP. P. 33.2; *Bobbora*, 255 S.W.3d at 335. Failure to demonstrate the substance of the excluded evidence results in waiver. *See* TEX. R. APP. P. 33.1(a)(1)(B); *Bobbora*, 255 S.W.3d at 335.

Because AVCO did not make an offer of proof or file a bill of exceptions to preserve the evidence for the appellate record, it waived its complaint that the trial court erred in excluding evidence related to Project One Roofing. We overrule this portion of AVCO's fifth issue.

## DIRECTED VERDICT

In its first issue, AVCO contends that the trial court erred in denying its motion for directed verdict because there was no evidence to support the jury's findings of (1) the existence of a valid and enforceable contract between itself and Moore; and (2) a breach of the contract by AVCO.

### Standard of Review and Applicable Law

An appeal from the denial of a motion for directed verdict is essentially a challenge to the legal sufficiency of the evidence. *Westport Oil & Gas Co., L.P. v. Mecom*, 514 S.W.3d 247, 255 (Tex. App.—San Antonio 2016, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (noting that contesting a directed verdict is a legal sufficiency challenge). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In performing a legal-sufficiency review, we must credit favorable evidence if reasonable fact finders could credit it and disregard contrary evidence unless reasonable fact finders could not disregard it. *Id.* A legal sufficiency challenge may only be sustained when the record discloses (a) a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We presume that jurors made all inferences in favor of the verdict, but only if reasonable minds could do so. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Jurors may not simply speculate that a particular inference arises from the evidence. *Id.*

A party must prove four elements to successfully establish a breach of contract cause of action: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) the breach caused the plaintiff's damages. *S & S Emergency Training Sols,*

***Inc. v. Elliott***, 564 S.W.3d 843, 847 (Tex. 2018). To prove the existence of a valid contract, a plaintiff must establish: (1) that an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. ***Menchaca***, 545 S.W.3d at 501 n.21.

## Formation of a Valid Contract

At issue herein are the third and fifth elements of contract formation. AVCO contends that no contract could have existed between itself and Moore under which Moore would be paid commissions for contracts he obtained for AVCO because Exhibit 1 does not set forth all essential terms of such a contract, and the parties did not reach a meeting of the minds as to those essential terms. Specifically, AVCO asserts that the parties did not agree on "the terms of how commissions were to be paid" (namely, the time when Moore became entitled to commission payments for a given project). AVCO also argues, without citing any authority, that the lack of signatures or "signatory sections" on Exhibit 1 is necessarily dispositive on the issue of contract formation.

Moore presented evidence at trial that AVCO made him an offer of employment that included a certain structure under which he would earn commissions, and that he accepted the offer. Moreover, AVCO does not dispute that it agreed to pay Moore at least *some* amount of commission payments for sales he procured during his employment with AVCO; (both Hicks and Osborn testified that Moore received all of the commission payments *to which he was entitled*). Indeed, AVCO concedes on appeal that "there is no dispute as to the [commission] percentages" set forth in Moore's Exhibit 1, admitting that there existed a meeting of the minds between the parties as to the commission structure. As to the allegedly missing essential terms, a valid contract for payment of commissions may exist even in the absence of an agreement on "how a commission is realized or whether the right to a commission extends to sales closed after the brokerage relationship ends." ***Perthuis v. Baylor Miraca Genetics Lab'ys, LLC***, 645 S.W.3d 228, 234 (Tex. 2022). Through the procuring cause doctrine, Texas law supplies a "default rule" which applies when a "valid agreement to pay a commission" does not address these questions.

*Id.*  Therefore, the absence of contractual language on these points is not dispositive.[4]  Finally, regarding the lack of signatures, "Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent."  *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010).  Here, no such explicit requirement is apparent from the face of the document, and Moore testified that he received a copy of Exhibit 1 during a meeting with Zimmerman (that is, that the agreement was delivered to him).  Considering the foregoing, we conclude the evidence was legally sufficient to support the jury's finding that a contract existed between the parties under which AVCO agreed to pay commissions to Moore.  *See Menchaca*, 545 S.W.3d at 501 n.21; *City of Keller*, 168 S.W.3d at 827.

Finally, AVCO contends that the statute of frauds bars the enforcement of any *oral* agreement between the parties regarding the payment of commissions.  This assertion does not comport with Texas law.  Even presuming that Exhibit 1 is not a written memorialization of the parties' agreement, the statute of frauds bars enforcement of oral contracts "not to be performed within one year from the date of making the agreement."  TEX. BUS. & COM. CODE ANN. § 26.01(b)(6) (West 2023).  Section 26.01(b)(6) bars only oral contracts that *cannot* be completed within one year.  *Gerstacker v. Blum Consulting Engineers, Inc.*, 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied) (citing *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982)).  Indefinite-term employment contracts are considered performable within one year and therefore do not fall within Section 26.01(b)(6) of the statute of frauds.  *Id.*

We overrule this portion of AVCO's first issue.

**Breach of Contract**

Having concluded that more than a scintilla of evidence supports the jury's finding that a valid contract existed between AVCO and Moore, we likewise conclude that legally sufficient evidence supports the jury's finding that AVCO breached the agreement between itself and Moore.

AVCO argues that there is no evidence Moore rendered substantial performance under the contract, because Moore could no longer liaise between clients and AVCO (including "collecting payments" and "handl[ing] change orders") following his termination.  Therefore, AVCO had no obligation to pay the disputed commissions, and could not have breached by

---

[4] We address more fully *infra* the applicability of the procuring cause doctrine to this case.

failing to do so. Under the aforementioned procuring cause doctrine, absent contrary contractual language, "the broker's entitlement to a commission vests on his having procured the sale, not on his actual involvement in a sale's execution or continued employment through the final consummation of the sale." *Perthuis*, 645 S.W.3d at 234–35. The Texas Supreme Court has identified three main questions which arise when determining whether the procuring cause doctrine applies: (1) whether the parties had the "kind of contractual relationship to which the procuring-cause doctrine applies"; (2) whether the parties "displace[d] the doctrine by the terms of their contractual agreement"; and (3) whether the sales for which the plaintiff seeks to recover commissions were "the direct and proximate result of the plaintiff's efforts or services." *Id.* at 234, 241-42.

Regarding the first question, "the minimum prerequisite for the doctrine to apply is an agreement to pay a commission on a sale." *Id.* at 234. The jury found that Moore and AVCO entered into "an agreement to pay [Moore] commissions on sales," a finding which we conclude is supported by legally sufficient evidence. Therefore, the contractual relationship between Moore and AVCO is "the kind to which the procuring-cause doctrine applies."[5] *Id.* at 237. And, as AVCO highlights in its argument on appeal, far from "displac[ing]" the doctrine" by contractual agreement, the parties made no explicit agreement regarding either the triggering event upon which Moore earned his commission payments or what would happen vis-à-vis those payments upon Moore's termination. "[P]arties are free to contract to 'authorize commissions only on sales that close during the employment or brokerage relationship' or 'condition commissions on the money from the sale being received within a particular time frame.'" *Five Star Elec. Motors, Inc. v. Patlovany*, No. 01-22-00417-CV, 2024 WL 1098206, at *5 (Tex. App.—Houston [14th Dist.] Mar. 14, 2024, no pet. h.) (mem. op.) (quoting *Perthuis*, 645 S.W.3d at 237). But the contract must expressly say so, and limitations or exceptions of this kind regarding commissions on procured sales cannot be inferred from silence on the issue." *Id.*

---

[5] AVCO attempts to argue that the at-will nature of Moore's employment, as well as his status as a "W-2 employee," precludes the existence of an agreement to pay commissions and renders the procuring cause doctrine inapplicable. However, "[d]istinctions in employment status—for example, whether [Moore] was an at-will employee or an independent contractor or something else—have nothing to do with the question that implicates the procuring-cause doctrine." *Perthuis v. Baylor Miraca Genetics Lab'ys, LLC*, 645 S.W.3d 228, 238 (Tex. 2022). "Absent the parties' direction to deviate from the default rule, it is analytically unsound to derive any meaning from the at-will-employment context regarding the obligation to pay commissions for sales procured before termination." *Id.* at 239.

11

We note that the third query, whether Moore was the procuring cause of the sales for which he sought to recover commissions, "will usually present a fact question." *Perthuis*, 645 S.W.3d at 243. When an incomplete theory of recovery is submitted to the jury without objection and no written findings are made by the trial court on the missing element, the omitted element is deemed to have been found by the court in such manner as to support the judgment if it is reasonable to do so in light of the evidence in the record. TEX. R. CIV. P. 279; *Guerra*, 348 S.W.3d at 228–29; *see also Reliable Life Ins. Co. v. Torres*, 509 S.W.2d 409, 411 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.) ("Omitted issues, constituting only a part of a complete and independent ground and being merely supplemental or incidental to other issues submitted and answered," may be deemed found in support of judgment). In this case, the issue of Moore's procuring cause status is a component of his breach of contract claim (and in particular, is a sub-component of the element of Moore's performance under the parties' agreement), and necessarily referable thereto. *See, e.g., Stuckey v. Union Mortg. & Inv. Co.*, 383 S.W.2d 429, 440 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.) (in breach of contract action seeking payment of commission for procurement of loan, disputed sub-issue of acceptance of performance deemed found in support of judgment). Moore initially requested a jury instruction on this issue, citing the Texas Supreme Court's admonition in *Perthuis*, but subsequently withdrew the request following AVCO's objection; therefore, the issue was not submitted to the jury.[6] And the trial court was not asked to (and did not) render a finding of fact on said issue. Thus, a deemed finding can be made as to Moore's procuring cause status if there is some evidence to support such a finding. *Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990).

A plaintiff shows his procuring cause status by proving that his efforts were both the proximate and but-for cause of the relevant sales. *Perthuis*, 645 S.W.3d at 241-42. AVCO does not dispute on appeal that Moore was the procuring cause of the projects listed on Exhibit 8. Moore testified at trial to details about his role as a primary salesperson for several of the jobs listed, including those for Green Acres, Kluber Lubrication, 4 Star Cinema, Pyle Properties, Country Meat Market, Central Builders, and Prosperity Bank. Zimmerman further testified that but for Moore's efforts, AVCO would not have customer relationships with Prosperity Bank, Central Builders, Pyle Properties, and Kluber Lubrication, and that Moore's contacts were

___

[6] "[T]rial courts should give juries clear instructions regarding the plaintiff's burden to show his status as the procuring cause for each sale at issue and the defendant's ability to defeat that showing, in whole or in part, with evidence that the plaintiff's original role had been overtaken by events and changed circumstances." *Id.* at 243.

integral in getting AVCO "in the door" to obtain the Green Acres job. Moreover, the contract proposals presented by Moore for Prosperity Bank, Green Acres, Pyle Properties, and Kluber Lubrication bear his signature as the representative for AVCO and are signed by the respective client representatives, further supporting his assertion that he was instrumental in procuring those contracts. Conversely, AVCO presented no evidence that "no commissions would be due to [Moore] even if [he] had remained employed," thereby failing to sever the causal link between Moore and the contracts at issue. *See id.* at 243.

We conclude that some evidence exists in the record to support a deemed finding that Moore was the procuring cause of at least some of the job contracts for which he sought to recover commissions. Consequently, we conclude that the procuring cause doctrine is applicable to this case, and its default rules apply to the commission agreement at issue—that Moore's right to receive commissions vested on his having procured the relevant sales, and that Moore's entitlement to those commissions was not conditioned on his continued employment with AVCO through final completion of the roofing projects to which the contracts pertained. *See id.* at 239. The foregoing evidence of Moore's procurement of sales (and accordingly, of his performance under the parties' agreement) is more than a scintilla. Therefore, we conclude that legally sufficient evidence supports the jury's finding that AVCO breached the parties' agreement by failing to pay Moore all amounts he earned as commissions for projects for which he was the procuring cause. We overrule this portion of AVCO's first issue.

## JUDGMENT NOTWITHSTANDING THE VERDICT

In its second issue, AVCO alleges that the trial court erred in denying its motion for judgment notwithstanding the verdict because no evidence supports the amount of damages the jury awarded to Moore for his breach of contract claim.

### Standard of Review

A trial court may disregard a jury's verdict and grant a judgment notwithstanding the verdict if a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal sufficiency standard, and therefore incorporate the legal-sufficiency standard stated above. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). A trial court properly denies a motion for

JNOV if, looking at all the evidence in the light most favorable to the fact challenged or the finding found by the jury, a reasonable trier of fact could have formed a firm belief or conviction that the fact or finding was true. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied).

**Applicable Law**

To recover damages for breach of contract, a plaintiff must show that he suffered a pecuniary loss as a result of the breach. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 323–24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). To recover lost profit damages, a plaintiff must show the loss by competent evidence and with reasonable certainty. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010); *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). "Such losses must be the natural, probable, and foreseeable consequence of the defendant's conduct." *S. Elec. Servs.*, 355 S.W.3d at 324. A plaintiff may not recover breach-of-contract damages "if those damages are remote, contingent, speculative, or conjectural." *Id.* at 323–24; *see Signature Indus. Sevs., L.L.C. v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022) (courts do not "award speculative damages for any claim that is too remote and depend[ent] upon too many contingencies.").

When reviewing legal sufficiency, we consider only the evidence and inferences that tend to support the award of damages and disregard all evidence and inferences to the contrary. *City of Keller*, 168 S.W.3d at 826. For purposes of legal sufficiency review, the factfinder has discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 57 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

**Analysis**

AVCO asserts that the record evidence was insufficient to allow a reasonable jury to award Moore a total of $200,000 in damages for lost commissions and future unpaid commissions. The jury's award was broken down into $71,124.24 for "unpaid commissions sustained in the past," and $128,875.76 for "unpaid commissions that, in reasonable probability, will be sustained in the future." Based on the evidence before the finder of fact, we conclude that a rational basis existed for the jury's damages award.

14

During his testimony, Moore testified to the method of calculating his commission payments, his role as account manager, sales manager, or both in the projects listed on Exhibit 8, and the source of the invoice amounts he used in calculating the total commissions he alleged AVCO owed him. Although Moore admitted that the invoice amount for the Green Acres project was an estimate based upon his work in drafting the contract proposal, both Garvey and Hicks testified that AVCO received a check for approximately one million dollars for this project shortly after Moore's termination. Both Garvey and Hicks similarly testified that the project was not yet complete and not all payments were yet received, although none of the witnesses affiliated with AVCO were able to testify how much AVCO received from Green Acres to date. The jury could also refer to Exhibit 1 and a JobNimbus screenshot provided by Moore setting forth the commission structure for the Green Acres job, which appears to contemplate the possibility of a total invoice amount exceeding four million dollars.

The total amount Moore sets forth as owed to him *only* for projects for Kluber Lubrication, 4 Star Cinema, Pyle Properties, Country Meat Market, Central Builders, and Prosperity Bank (that is, projects about which Moore testified to his procurement efforts) exceeds $85,000.00. At the time of trial, these projects were all either complete or in progress, with Osborn testifying that AVCO already received full payment for several of them; therefore, the commission payments in question were not remote or speculative. The estimated commission amount for the Green Acres roofing project is given as $131,200.00, and the record contains no indication that said project is unlikely to conclude, nor that this amount is out of line with the commission structure under which Moore would have been paid. Indeed, Garvey (who was meant to split the Green Acres commission with Moore) testified that it was "possible" he already received commission payments exceeding $100,000.00 for the incomplete Green Acres project by the time of trial.

In evaluating the legal sufficiency of a damages award, we do not lightly reject the judgment of a jury. *W & T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 899 (Tex. 2020). Given the documentary and testimonial evidence herein, we conclude that a reasonable and fair-minded jury could have arrived at the number this jury did. We conclude that the jury's damages award is supported by legally sufficient evidence and overrule AVCO's second issue.

15

In its third issue, AVCO argues that the trial court committed reversible error by impaneling a six-person jury absent any agreement by the parties.

## Standard of Review and Applicable Law

"In a civil case pending in a statutory county court in which the matter in controversy exceeds $250,000, the jury shall be composed of 12 members unless all of the parties agree to a jury composed of a lesser number of jurors." TEX. GOV'T CODE ANN. § 25.0007(c) (West 2023). "In a civil case tried in a county court at law, the parties may, by mutual agreement, agree to try the case with any number of jurors and agree to have a verdict rendered and returned by the vote of any number of jurors less than all those hearing the case." *Id.* § 25.2142(v) (West 2023). Where a party is statutorily entitled to a jury of twelve and timely requests same, the refusal to impanel a jury of twelve may constitute reversible error. *Rabson v. Rabson*, 906 S.W.2d 561, 564 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (citing *Thomas v. City of O'Donnell*, 811 S.W.2d 757 (Tex. App.—Amarillo 1991, no writ)). However, "a party cannot agree to a trial … before six jurors, wait for an unfavorable verdict, and then complain about the number of jurors." *Audia v. Hannold*, 328 S.W.3d 661, 663–64 (Tex. App.—Dallas 2010, no pet.). Similarly, a party may waive its complaint regarding the numerical composition of the jury by failing to timely raise that complaint before the trial court. *See Smith v. Est. of Branch*, No. 05-90-00941-CV, 1991 WL 219469, at *9 (Tex. App.—Dallas Oct. 11, 1991, no writ) (mem. op.) (rejecting party's attempt "to have two bites of the apple by sitting back and allowing a six[-]person jury to be seated without making his objections known to the trial court and then later hoping to obtain a new trial by complaint of this error in his motion for new trial").

## Analysis

AVCO claims that a jury of twelve was mandatory in this matter because the amount in controversy exceeded $250,000.00 which Moore does not dispute. The record indicates that the parties agreed upon a twelve-person jury in advance of trial, and only became aware of the trial court's intention to impanel a six-person jury directly before jury selection began. It is perhaps understandable, then, that neither party was able to spontaneously raise the requirement contained in Section 25.0007(c) of the Texas Government Code during the ensuing discussion. TEX. GOV'T CODE ANN. § 25.0007(c). However, following the trial court's pronouncement that

trial would proceed before a six-person jury, counsel for AVCO expressed agreement, stating, "Your Honor, we don't have any objection to wanting to proceed at six." AVCO is not now entitled to retroactively rescind its agreement and receive another "bite of the apple" merely because the verdict was not in its favor. *See Audia*, 328 S.W.3d at 663–64; *Est. of Branch*, 1991 WL 219469 at \*9. We conclude that AVCO did not preserve its complaint regarding the number of jurors for appellate review. TEX. R. APP. P. 33.1. Consequently, we overrule AVCO's third issue.

## JURY CHARGE ERROR

In its fourth issue, AVCO contends that the trial court abused its discretion in refusing to include AVCO's proposed definition of the term "contract" in the jury charge.

### Standard of Review and Applicable Law

We review a trial court's decision to include or refuse instructions and definitions in the jury charge for an abuse of discretion. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). If we determine the trial court abused its discretion by defining or refusing to define a term in the jury charge, we must then review the entire record to determine if that error was harmful. *See Tite Water Energy, LLC v. Wild Willy's Welding LLC*, No. 01-22-00158-CV, 2023 WL 5615816, at \*7 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, pet. denied) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)). Moreover, "[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278.

Texas's rules of procedure establish the preservation requirements to raise a jury-charge complaint on appeal. *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014). The complaining party must inform the trial court of the error before the charge is formally submitted to the jury, and "must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274; *see also* TEX. R. APP. P. 33.1. Under Rule of Civil Procedure 274, "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. As a general rule, preservation requires (1) a timely objection "stating the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial

court aware of the complaint, unless the specific grounds were apparent from the context," and (2) a ruling. *See* TEX. R. APP. P. 33.1. Stated differently, the test ultimately asks "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Burbage*, 447 S.W.3d at 256 (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). The ultimate purpose of Rule 274 is to afford trial courts an opportunity to correct errors in the charge by requiring objections both to clearly designate the error and to explain the grounds for complaint. *Id.* (citing *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987)). As the Texas Supreme Court has noted, "trial court awareness is the key." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 831 (Tex. 2012).

**Analysis**

AVCO asserts that the trial court committed reversible error "by refusing to submit AVCO's proposed definition in the jury charge regarding the legal definition of a contract[.]" However, in the citation to the reporter's record supplied by AVCO, we do not locate a specific objection to the omission of any such definition. Nor are we able to locate the objection from Moore (quoted by AVCO) that no definition is necessary because "contract" is a "common term of [sic] which the jury should be familiar." Instead, within the cited page range, Moore objects to AVCO's proposed instruction on the four elements of breach of contract, as well as its proposed instruction on the necessity of a meeting of the minds, and the trial court sustains both objections. Finally, AVCO's proposed jury charge as submitted to the court contains only the instructions discussed at the charge conference and does not contain a suggested legal definition of the term "contract."

Here, there is no indication in the record that the trial court was aware of AVCO's concern regarding the omission of a legal definition of the word "contract," and consequently, the trial court had no opportunity to correct the potential error. *See Cruz*, 364 S.W.3d at 830 ("The aggrieved party must show that the trial court was aware of the party's request and denied it."). Our procedural rules are "technical, but not trivial." *Burbage*, 447 S.W.3d at 258. And, although we construe those rules liberally so that the right to appeal is not lost unnecessarily, if an objection is not sufficient to apprise the trial court of the issue a party later claims is error on appeal, the issue must be overruled. *Id.*; *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 422-24 (Tex. App.—El Paso 2020, pet. denied). There was no discussion on the record of

18

the issue AVCO now raises on appeal; consequently, AVCO waived this complaint. TEX. R. APP. P. 33.1; *see also* TEX. R. CIV. P. 274. Accordingly, we overrule AVCO's fourth issue.

## DISPOSITION

Having overruled each of AVCO's five issues, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 22, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 22, 2024**

**NO. 12-23-00255-CV**

**AXION SALES FORCE, LLCD/B/A AVCO ROOFING,**
Appellant
V.
**RYAN MOORE,**
Appellee

Appeal from the County Court at Law No 2
of Smith County, Texas (Tr.Ct.No. 73900-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **Axion Sales Force, LLC d/b/a AVCO Roofing (AVCO)** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*