

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00091-CV

———————————————

GABRIELA N. ANDERSON, Appellant

V.

HILEY CARS HURST, LP, Appellee

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2019-004035-2

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

After a jury trial, the trial court entered a take-nothing judgment against pro se Appellant Gabriela N. Anderson on her claims against Appellee Hiley Cars Hurst, LP. Anderson has appealed and raises what we construe as seven issues: (1) the trial court abused its discretion by limiting her handwriting expert's testimony; (2) the jury failed to answer the proportionate-responsibility question in the jury charge; (3) the trial court abused its discretion by excluding Anderson's alibi evidence; (4) there was error during jury selection; (5) "[t]his case needs to be considered in the larger context of the disclosures" Anderson has made "to the [c]ourts" since March 2023; (6) the evidence was insufficient to support the jury's findings; and (7) the trial court erred by ordering Anderson to pay Hiley's attorney's fees and costs as the prevailing party on Anderson's Rule 91a motion to dismiss Hiley's counterclaim. We will affirm.

## I. Background

This case arises from a dispute over what happened during Anderson's June 3, 2017 visit to Hiley Mazda of Hurst, a car dealership that Hiley owns. That day, Anderson met with the dealership's finance director, Joe Parker. According to Parker, Anderson wanted to refinance the loan on her 2015 Mazda Miata to lower her monthly payment. As part of that transaction, Anderson signed several documents, including a pay-off verification sheet, a motor-vehicle installment-sales contract, an itemized breakdown of the purchase, and a vehicle-title application.

Hiley paid off Anderson's existing car loan with Wells Fargo; her new loan was with EECU. Anderson paid her new, lower monthly payments to EECU until she traded in the Miata and got a new car in 2020.

Anderson admitted that she met with Parker on June 3, 2017, but claimed that she did not refinance the loan on her Miata and that her signatures on various documents related to the transaction were forged. In May 2019, Anderson sued Hiley, asserting several claims, including fraud and violations of the Texas Deceptive Trade Practices Act (DTPA).

Hiley answered with a general denial and various affirmative defenses. Hiley also counterclaimed for its reasonable and necessary attorney's fees and court costs, claiming that Anderson's DTPA action was groundless, was brought in bad faith, and was brought to harass it. *See* Tex. Bus. & Com. Code Ann. § 17.50(c) ("On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs."). Anderson unsuccessfully moved to dismiss Hiley's affirmative defenses and counterclaim under Texas Rule of Civil Procedure 91a. *See* Tex. R. Civ. P. 91a.1. The trial court awarded Hiley $4,207 in costs and attorney's fees for prevailing on the motion. *See* Tex. R. Civ. P. 91a.7.

The case was tried to a jury in March 2023. At the start of trial, Hiley orally nonsuited its counterclaim. The jury then heard testimony from, among others,

3

Anderson; Parker; and Anderson's and Hiley's handwriting experts. Anderson's fraud and DTPA claims were submitted to the jury, and the jury unanimously found against her on both. Based on the jury's verdict, the trial court signed a final judgment ordering that Anderson take nothing and that Hiley recover $4,207 as the prevailing party on Anderson's Rule 91a motion.

Anderson moved for a new trial, challenging the sufficiency of the evidence supporting the jury's findings. The motion was overruled by operation of law. Anderson timely appealed.

## II. Anderson's Issues and Arguments

In her brief, Anderson specifically articulates five issues: (1) the trial court abused its discretion by not allowing her handwriting expert witness to testify about reports from Anderson's four consulting handwriting expert witnesses; (2) the jury erroneously failed to answer the proportionate-responsibility question in the jury charge; (3) the trial court abused its discretion by not admitting Anderson's "proof of alibi . . . in its entirety"; (4) "[i]n the selected [j]ury, one individual crossed out by both [Hiley]'s attorney and [Anderson] was nevertheless kept as [a] juror and [was] appointed the [j]ury leader"; and (5) "this case needs to be considered in the larger context of the disclosures she made to the [c]ourts in writing since March 2023."

In the argument section of her brief, Anderson also challenges the legal and factual sufficiency of the evidence to support the jury's findings. She further complains that Hiley "filed a frivolous[,] meritless counterclaim that caused [her]

4

expenses (over $7000 in forensic document examiners fees) and much mental anguish" and about "her very unfair loss of Motion to Dismiss Counterclaim ($4,207)," for which the trial court ordered her to pay Hiley $4,207 in costs and attorney's fees even though Hiley nonsuited its counterclaim at the start of trial. We construe these arguments as Anderson's sixth (evidentiary sufficiency) and seventh issues (the Rule 91a costs and fees), respectively.

Hiley asserts that Anderson has forfeited her issues because she failed to comply with the applicable briefing rules requiring citations to the record and applicable legal authority. We agree.

The "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal." *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. R. App. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing). Although Anderson is pro se, a pro se litigant is held to the same standards as a licensed attorney and must comply with applicable laws and procedural rules. *Flores v. Off. Depot, Inc.*, No. 02-10-00311-CV, 2011 WL 2611140, at *2 (Tex. App.—Fort Worth June 30, 2011, no pet.) (mem. op.) (citing *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677 (Tex. App.—Dallas 2004, pet. denied)). On appeal, a pro se appellant must properly present her case. *Flores*, 2011 WL 2611140, at *2; *Strange*, 126 S.W.3d at 678. To do so, her brief must contain, among other things, "a clear and

concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i).

In her third, fourth, and fifth issues, Anderson cites no authority in support. Moreover, Anderson's brief contains no record citations whatsoever. Because Anderson failed to include any record citations and failed to cite applicable authority to support her arguments in her third through fifth issues, she has forfeited all her issues by inadequately briefing them. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284; *McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *2–3 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.); *see also Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.) ("A pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure." (first citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); and then citing *Strange*, 126 S.W.3d at 677)).

Even if Anderson had adequately briefed her issues, we would—as we explain below—overrule them because they were either unpreserved or fail on their merits.

## A. Anderson's expert witness

Anderson argues in her first issue that the trial court abused its discretion by not allowing her testifying handwriting expert "to reference the two sworn affidavits produced by [her] sworn expert which mentioned peer-reviews of additional 4 reports by unsworn forensic document examiners ([Anderson]'s consultants) who independently had analyzed [Hiley]'s contracts and found many forged signatures of

6

[Anderson] on those contracts." *See* Tex. R. Civ. P. 192.3(e) (setting out scope of discovery for testifying and consulting experts), 192.7(c)–(d) (defining "testifying expert" and "consulting expert").

"'[W]hen evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal,' and failure to do so results in waiver of the complaint." *Dillard v. N. Hills Manor*, No. 02-18-00309-CV, 2019 WL 5089759, at *2 (Tex. App.—Fort Worth Oct. 10, 2019, no pet.) (mem. op.) (quoting *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.)). To preserve the evidence in the record, the proponent must submit an offer of proof or make a bill of exception unless the substance of the excluded evidence was apparent from the context. *See* Tex. R. App. P. 33.1(a)(1)(B), 33.2; Tex. R. Evid. 103(a)(2), (c); *Dillard*, 2019 WL 5089759, at *2. Here, Anderson did not submit an offer of proof or bill of exception regarding her expert's excluded testimony, and we are left to guess as to its substance and what it might prove. *See In re J.V.*, No. 02-19-00392-CV, 2020 WL 1540865, at *8 (Tex. App.—Fort Worth Apr. 1, 2020, no pet.) (mem. op.). Because Anderson failed to preserve in this record the substance of the evidence that the trial court excluded, she failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a)(1)(B), 33.2; Tex. R. Evid. 103(a)(2), (c); *Dillard*, 2019 WL 5089759, at *2. We overrule Anderson's first issue.

**B. The jury charge**

Anderson contends in her second issue that the jury failed to answer the proportionate-responsibility question in the jury charge (Question Three). She asserts that "the jury did not provide a percentage (51%) of responsibility to one of the parties on the Court's Charge form, which arouses the question of how they reached the decision to vote for [Hiley] despite [Anderson]'s preponderant clear and convincing evidence of loss, deceit, and fraud." But, as Hiley points out, the jury was instructed to answer Question Three only if it answered "yes" to Question One (DTPA liability) or Question Two (fraud liability). The jury answered "no" to both liability questions and thus properly did not answer Question Three. And to the extent that Anderson is complaining about the jury charge, she stated during the charge conference that she had no objection to it. Because she lodged no objection to the charge, she thus failed to preserve any complaint regarding the charge itself. *See* Tex. R. Civ. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43–44 (Tex. 2007) (explaining that the complaining party must timely and plainly make the trial court aware of a jury-charge complaint and obtain a ruling). We overrule Anderson's second issue.

8

## C. Anderson's alibi

In her third issue, Anderson complains that the trial court abused its discretion by not admitting her "proof of alibi . . . in its entirety," which she contends would have proved that she was not at the dealership when Hiley claimed she had met with Parker and refinanced her car. Parker testified that on June 3, 2017, Anderson was in his office at the dealership for several hours. But according to Anderson, "she was elsewhere teaching lessons" during the time that Parker "said he completed the 'lengthy' / 'over 2h' transaction, and her employer's evidence" would have shown that she could not have been at the car dealership more than 30 minutes that day.

At trial, Anderson explained that she taught private language lessons through her company Diplomat Languages, Inc. and that she kept timesheets to track her students' names along with the dates and times of the classes. She testified that on June 3, 2017, she "had classes that day, which [she could] prove with time sheets," specifically a class in Lantana that morning from 9:00 to 11:00 and a class that afternoon in Fort Worth from 2:00 to 4:00. She further testified that she had stopped in Hurst—presumably at the Hiley dealership—in between these classes.

During her testimony, Anderson pointed to a timesheet that had been admitted into evidence that showed that she had taught a two-hour class that morning. She then stated that she had "sheets from two other students [that] were in the afternoon." Hiley objected, and the trial court chastised Anderson about referring to documents not in evidence and instructed the jury to disregard any of Anderson's

9

statements made about documents not in evidence. At no time, however, did Anderson attempt to offer the additional timesheets into evidence.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must also get a ruling—either express or implied—from the trial court. Tex. R. App. P. 33.1(a)(2)(A), (b); *see Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002). To preserve error in the exclusion of evidence, a party must (1) timely object or move to admit the evidence, stating the specific ground if not apparent from the context and (2) as noted above, submit an offer of proof or make a bill of exception unless the substance of the excluded evidence was apparent from the context. *See* Tex. R. App. P. 33.1(a)(1)(B), 33.2; Tex. R. Evid. 103(a)(2).

Because Anderson never offered the additional timesheets into evidence and never secured a ruling from the trial court on their admissibility, she failed to preserve error for our review. *See* Tex. R. App. P. 33.1(a); *see, e.g., Bobbora*, 255 S.W.3d at 334 ("To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court."). We overrule Anderson's third issue.

10

## D. Jury selection

Anderson asserts in her fourth issue that "[i]n the selected Jury, one individual crossed out by both Defendant's attorney and Plaintiff was thus nevertheless kept as [a] juror and appointed the [j]ury leader." Hiley responds that Anderson cannot challenge error during jury selection because there is no reporter's record of voir dire.[1] We agree. Without a reporter's record or bill of exceptions, any error during voir dire is not preserved for appellate review. *See Lauderdale v. Ins. Co. of N. Am.*, 527 S.W.2d 841, 843–44 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.); *see also Ondemir v. Boskind*, No. 04-02-00592-CV, 2003 WL 1232995, at *1 (Tex. App.—San Antonio Mar. 19, 2003, no pet.) (mem. op.). We thus overrule Anderson's fourth issue.

## E. Post-March 2023 disclosures

Anderson states her fifth issue as follows: "[Anderson]'s respectful opinion is that this case needs to be considered in the larger context of the disclosures she made to the [c]ourts in writing since March 2023 (herein described in Statement of Facts)." In her Statement of Facts, Anderson asserts that this case "should be seen in the framework of extraneous facts" and describes these facts, none of which are relevant

---

[1]In her reporter's-record designation, Anderson asked the court reporter to prepare "all the portions of the proceedings, transcripts[,] and exhibits . . . pertaining to Cause 2019-004035-2." *See* Tex. R. App. P. 13.1(d), 34.6(a)(1), (b), 35.3(b). Anderson has not complained that the court reporter filed an incomplete record, nor has she sought to supplement the record. *See* Tex. R. App. P. 34.6(d); *cf. Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal.").

to this case's merits or are supported by the record.[2] We thus overrule Anderson's fifth issue.

## F. Sufficiency of the evidence

In what we construe as Anderson's sixth issue, she challenges the legal and factual sufficiency of the evidence supporting the jury's findings against her on her DTPA and fraud claims. She complains that Hiley deceived her by representing "that she qualified for a promotion and gave her deceptive 'internal use' forms [that] she read and signed." She also asserts that her signature was forged on several documents relating to the transaction.

### 1. *Standard of review*

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere

---

[2]Anderson references two exhibits in her appendix in support of her "framework of extraneous facts"—an "Affidavit of Personal Circumstances" and "a few samples from the voluminous correspondence 2008–current." As these documents—along with several other documents included in Anderson's appendix—are not part of the appellate record, we cannot consider them. *See* Tex. R. App. P. 34.1 (stating that appellate record consists of clerk's record and, when necessary, reporter's record); *Ahmed v. Sosa*, 514 S.W.3d 894, 896 (Tex. App.—Fort Worth 2017, no pet.) ("[I]t is axiomatic that we may not consider a document cited in a brief and attached as an appendix if it is not formally included in the record on appeal."); *see also Cummings v. Billman*, 634 S.W.3d 163, 166 n.1 (Tex. App.—Fort Worth 2021, no pet.) (mem. op.) ("[W]e cannot consider matters outside the appellate record in rendering our decision.").

scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

13

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When, as here the party with the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006). When conducting a factual-sufficiency review, a court of appeals must not merely substitute its judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

### 2. Analysis

Without an objection to the jury charge, we review evidentiary sufficiency in light of the charge submitted. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005). To prevail on her DTPA claim, Anderson had to prove that Hiley engaged in a "false, misleading, or deceptive practice"—here, defined as "failing to disclose information about goods that was known at the time of the transaction with

14

the intention to induce . . . Anderson into a transaction she otherwise would not have entered into if the information had not been disclosed"—that Anderson relied on to her detriment and that was a producing cause of her damages.[3] *See* Tex. Bus. & Com. Code Ann. §§ 17.46(a), (b)(24), 17.50(a)(1). To succeed on her fraud claim, Anderson was required to establish that (1) Hiley made a material misrepresentation; (2) Hiley made the misrepresentation knowing that it was false or without any knowledge of its truth and as a positive assertion; (3) Hiley made the misrepresentation with the intent that Anderson act on it; and (4) Anderson justifiably relied on the misrepresentation and thereby suffered injury.[4] *See, e.g.*, *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (citing *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)).

Anderson testified that she went to the car dealership on June 3, 2017, to do "market research." She did not want to refinance her Mazda Miata. Her goal was to find out how much the dealership would offer for her car when she traded it in as part of a future new-car purchase involving a larger but less expensive vehicle with lower monthly payments. To that end, she met with Parker, the dealership's finance director,

---

[3]The jury charge defined "producing cause" as "a cause that was a substantial factor in bringing about the damages, if any, and without which damages would not have occurred." The charge further instructed the jury that "[t]here may be more than one producing cause."

[4]The charge defined "misrepresentation" as "a false statement of fact."

that day. Anderson claims Parker offered her a "promotion" that lowered her monthly payments until she traded in her car.

Anderson admitted that after June 3, she stopped making monthly payments to Wells Fargo, her original lender, and started making payments through EECU's website. She also admitted to receiving a letter from Wells Fargo stating that her vehicle loan with Wells Fargo was paid in full on June 20, 2017, and that the vehicle's title would be mailed to Hiley. She also acknowledged that her monthly payments were lower. Despite these changes, however, Anderson never contacted Hiley, Wells Fargo, or EECU with questions.

Although she started making monthly payments to a different entity, Anderson maintained that she did not know that EECU was a different lender. She claimed that she never agreed to or applied for a car loan from EECU and that she did not discuss a new loan with Parker or anyone else with Hiley on June 3, 2017. She admitted to signing a monthly-finance-payment estimate, which listed the loan term, annual percentage rate, and estimated monthly payments based on various service-plan levels. She claimed, however, that this document was to "lock in negotiations" for a future deal and was unrelated to refinancing her car loan.

In contrast, Parker testified that Anderson came to the dealership that day to refinance her car loan to lower her monthly payments. As part of the refinancing transaction, Parker saw Anderson sign several documents, and he explained to her that she was refinancing through a loan from EECU and would thus no longer make

payments to Wells Fargo. It appeared to Parker that Anderson "[o]ne hundred percent" understood that she was refinancing her car that day.

Parker further testified that he did not forge Anderson's signature on any of the transaction documents. Anderson admitted signing at least two documents at Hiley that day, but she maintained that her signature on several other documents was forged. Wendy Carlson, Anderson's handwriting expert, examined three sets of Anderson's Hiley-document signatures and compared them to Anderson's known signatures. She concluded that the signatures on the motor-vehicle installment-sales contract, the EECU membership application, and a service receipt were not made by Anderson.

Carlson was "[c]ompletely confident" and had "no doubt" as to her findings. She admitted, however, that she did not examine either "wet ink" or carbon-copies[5] of Anderson's known signatures or the disputed signatures. She relied on photocopied or scanned documents, which can distort a signature's quality.

Janet Braun, Hiley's handwriting expert, confirmed that the more a document is copied, scanned, and resized, the less reliable the signature is. She testified that she compared Anderson's known signatures—one of which was an a original, wet-ink signature—with the signature on an original carbon copy of the motor-vehicle

---

[5]Hiley's handwriting expert and Parker explained that the installment-sales contract was a carbon-copy contract with three or four carbon copies of the original.

installment-sales contract and concluded that the signature on that contract was Anderson's.[6] Braun further testified that she was "very confident" in her findings.

The jury also heard testimony from Margaret Kayl, a private investigator and process server, and Katy Hintze, one of Anderson's language students. Kayl testified that when she served Michael Schumann—another finance manager at Hiley with whom Anderson had met in April 2018—with a subpoena, he was verbally and physically aggressive toward her, yelled expletives, and said that "it was all he could do to keep from ripping [Kayl's] effing head off."[7] Hintze testified that while practicing Italian with Anderson during her language lessons, they talked about Anderson's wanting to buy a new car rather than a used car because new cars were more reliable. Hintze said that Anderson intended to purchase a new car that was larger than her Miata, and she told Hintze that she "liked new cars because they tend to have less issues." Hintze further testified that Anderson never mentioned the word "refinance" in either English or Italian and never mentioned refinancing her car instead of buying a new one. During their discussions, Anderson always said that she wanted a new car.

---

[6]Anderson incorrectly asserts in her brief that Braun "withdrew [her] testimony when confronted with contradictory data [on cross-examination] at the trial."

[7]Although Schumann was not involved in the June 3, 2017 transaction, the trial-court judge allowed Kayl to testify because the judge believed that based on "the totality of the circumstances in connection with this litigation and what [Kayl] said, even though maybe [Schumann] didn't refer to [Anderson's] name, he was angry at [Anderson]" because she had subpoenaed him.

In addition to testimony, the jury considered several documents, including a copy of the Wells Fargo payoff letter and copies of various documents signed by Anderson at Hiley on June 3, 2017, including a monthly-finance-payment estimate, a vehicle-service agreement, a pay-off verification, an itemized breakdown of the transaction, a motor-vehicle installment-sales contract, a vehicle-title application, a GAP Waiver Addendum, a limited-warranty acceptance, an odometer-disclosure statement, and a credit application.

After examining the record for evidence supporting the jury's findings on Anderson's DTPA and fraud claims and ignoring all contrary evidence, we conclude that the evidence supports the jury's findings against Anderson. *See Dow Chem*, 46 S.W.3d at 241. After reviewing all the evidence, we conclude that the trial court's failure to find for Anderson was not against the great weight and preponderance of the credible evidence. *See id.* at 242. We overrule Anderson's sixth issue.

## G. Hiley's attorney's fees and costs

In what we construe as Anderson's seventh issue, she contends that Hiley filed a frivolous, meritless counterclaim that caused her over $7,000 in forensic-document-examiner fees, "much mental anguish," and $4,207 in attorney's fees and costs. As noted, Hiley counterclaimed under the DTPA for its reasonable and necessary attorney's fees and court costs, asserting that Anderson's DTPA action was groundless, was brought in bad faith, and was brought to harass Hiley. *See* Tex. Bus. & Com. Code Ann. § 17.50(c). Anderson moved to dismiss Hiley's counterclaim under

19

Rule 91a, arguing that it had no basis in law or fact. *See* Tex. R. Civ. P. 91a.1. The trial court denied the motion and awarded Hiley, as the prevailing party, $4,207 in mandatory costs and attorney's fees. Tex. R. Civ. P. 91a.7.

Rule 91a allows a party to move to dismiss a claim brought against it if the claim has "no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.*

On appeal, Anderson does not challenge the trial court's denying her Rule 91a dismissal motion. Instead, she asserts that Hiley's counterclaim was meritless and frivolous because Hiley "withdrew" it on the first day of trial "showing no proofs of it." She then recounts the evidence presented at trial that she contends supports her DTPA claim. She thus appears to argue that because Hiley nonsuited its counterclaim and she presented evidence supporting her DTPA claim at trial, the trial court erred by signing a final judgment that ordered her to pay the attorney's fees and costs that it had already ordered her to pay to Hiley as the prevailing party on her Rule 91a motion.[8] Because Anderson has not cited—and we have not found—any authority to support this contention, we overrule it.

---

[8]Anderson does not contend that she had already paid the $4,207 in attorney's fees and costs at the time the trial court signed the final judgment, and there is nothing in the record indicating that she had done so.

Anderson further argues that the trial court erred by ordering her to pay Hiley's costs and attorney's fees because such an award was not required. Under the current version of Rule 91a.7, a costs-and-fees award is discretionary: "[T]he court *may award* the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." Tex. R. Civ. P. 91a.7 (emphasis added); *see* Supreme Court of Tex., *Order Amending Texas Rule of Civil Procedure 91a.7*, Misc. Docket No. 19-9052 (July 11, 2019). But under the version of Rule 91a.7 applicable to this case, the trial court was required to award costs and fees to the prevailing party: "[T]he court *must award* the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." *See* Supreme Court of Tex., *Final Approval of Rules for Dismissals and Expedited Actions*, Misc. Docket No. 13-9022 (Feb. 12, 2013) (emphasis added) (adopting Rule 91a); *see also* Tex. R. Civ. P. 91a cmt.–2019 ("The amendments to Rule 91a.7 apply only to civil actions commenced on or after September 1, 2019. A civil action commenced before September 1, 2019 is governed by the rule as adopted in Misc. Docket No. 13-9022.").

We overrule Anderson's seventh issue.

### III. Conclusion

Having overruled all of Anderson's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 27, 2024